## METALLIZING ENGINEERING CO., Inc.,
## v. METALLIZING CO. OF
## AMERICA et al.

District Court, S. D. New York.

Aug. 1, 1945.

Burgess & Dinklage, of New York City, for plaintiff.

Morris Kirschstein, of New York City, for defendant Metallizing Co. of America.

BRIGHT, District Judge.

Plaintiff seeks an injunction pendente lite restraining defendants, who are partners doing business as the Metallizing Company of America, from infringing United States Letters Patent No. 2,320,327 (applied for August 6, 1942, and issued May 25, 1943) and the Reissue Patent No. 22,397 (applied for August 14, 1943, and issued November 30, 1943), directly or indirectly, and from contributorily infringing the reissue patent.

Defendants move to dismiss or strike paragraphs 13 and 14 of the complaint, which allege contributory infringement, or if that is denied, for a more definite statement or bill of particulars as to those and other paragraphs of the complaint.

The facts are not in substantial dispute. Both parties sell materials and equipment used in metallizing, that is the application of metal in spray form, and plaintiff also licenses patented processes of metallization. The patents mentioned, the second being the reissue of the first, both contain eleven identical claims, and relate to a process by which a metal surface, to which spray metal is to be applied with a high degree of bond, is conditioned for the spray

step by establishing contact between such surface and a metal electrode, electrically heating the contacting surfaces of the electrode and metal surface by means of an electric current flowing through the contacting surfaces to firmly bond the electrode material to the metal surface, and causing small amounts of electrode material to be left deposited on the metal surface. These small metal protuberances are means by which the spray material is bonded to the metal surface being treated.

The particular basis of the present suit seems to be the plaintiff's contention that the defendants, for the purpose of advancing the sale of its Mogul Electric Bonder, a transformer which may be used for the purpose of treating the metal surface in the manner mentioned, as well as for other purposes, has engaged in direct infringement of plaintiff's process patent by practicing the process claimed and described in demonstrating to others how the transformer may be so used, and in addition has engaged in a contributory infringement by inciting others so to infringe, by instructing them how to do it, by distributing written instructions to that end, by advising others that the patents mentioned are invalid and should be disregarded, and by advising and agreeing with purchasers of their transformer that defendants would safeguard and indemnify purchasers of their transformer against the consequences of such infringement.

One of the purchasers of defendants' Mogul Electric Bonder was the Kenyon Bearing & Auto Parts Co., Inc. Plaintiff brought suit against it in the United States District Court for the District of Connecticut for infringement of the process claims of the reissue patent. The defense of that suit was assumed and conducted by defendants here who had sold the apparatus to Kenyon. The case was tried before Judge Hincks and resulted in a decree in favor of plaintiff. D.C., 62 F.Supp. 42. A final decree was entered in favor of plaintiff on April 17, 1945, which held the patent good and valid, that all of its claims, except 8, 9 and 10, had been infringed, and granted an injunction against Kenyon from practicing or causing to be practiced the process involved in the patent, with costs and damages to be ascertained. An appeal has been taken from the decree and is now pending.

■ In view of the fact that defendants here assumed and conducted the defense of that litigation in behalf of the Kenyons, they are bound by the adjudication then made and it must now be assumed that the patentability of the process is no longer a question between the parties to this suit. Caterpillar Tractor Co. v. International Harvester Co., 3 Cir., 120 F.2d 82–84, 139 A.L.R. 1. That an appeal is pending does not militate against the efficacy or binding effect thereof. Deposit Bank of Frankfort v. City of Frankfort, 191 U.S. 499–511, 24 S.Ct. 154, 48 L.Ed. 276; Reed v. Allen, 286 U.S. 191; Cohen v. Superior Oil Corporation, 3 Cir., 90 F. 2d 810.

■ Contributory infringement, of course, was not involved in the Kenyon case. Defendants there were held to be direct infringers. During the trial discussion was had looking to defendants here becoming co-defendants there, after it appeared that they had assumed and were conducting the defense. Their counsel offered to make the defendant company here a co-defendant in the other suit if plaintiff would charge it with contributory infringement. The offer was accepted by plaintiff's counsel, who stated that plaintiff charged it with both direct and contributory infringement, and further stated that it was his understanding that if the defendant lost in the Kenyon case, defendants here would, therefore, be precluded from infringing. Whereupon defendant's counsel stated that he did not agree to that, that there was a difference between making the Metallizing Company a defendant and intervening; that it was not intervening, but that if plaintiff wished to charge it with infringement it should do so, and that charge would be denied and litigated. It contended that there was a serious question whether contributory infringement could exist at all, particularly in view of the fact that defendants only sold the Mogul Electric Bonder, which was an unpatented apparatus capable of use not only in carrying out the patented process but also for many other purposes. Nothing, however, seems to have been done except the making of the admission that the Metallizing Company had an understanding with the Kenyon Company that it would be held harmless and that all costs, expenses and damages in that suit would be paid by the Metallizing Company. In view of this situation it is obvious that contributory infringement was not at issue or litigated in the Kenyon case.

But even if it might be said that the mere fact that the subject was not litigated would not preclude the binding effect of the judgment, if it could have been litigated, a court of equity might refuse to enjoin if it were obvious that the patent was being used to enforce or direct the sale of an unpatented article. Failure to litigate under those circumstances, it was said by Mr. Justice Douglas in Mercoid Corporation v. Mid-Continent Inv. Co., 320 U.S. 661–669, 64 S.Ct. 268, 88 L.Ed. 376, would not foreclose the court's discretion to deny injunctive relief.

Application for the original patent was filed August 6, 1942. The patent issued May 25, 1943. Plaintiff published in the Jan.-Feb. 1943 edition of its "Metco News" an advertisement of its "Fuse Bond" unit, by means of which a controllable rough deposit of electrode metal could be fused right into the base metal, providing an ideal bond for coatings of any sprayed metal, and further stating that the equipment was available for a nominal rental, and its process was likewise available under an exceedingly reasonable licensing arrangement. Again in the March-April, 1943, issue of "Metco News," further reference was made to the fuse bond method which was described fully with illustrations.

About May 1, 1943, defendants came out with their announcement of the Mogul transformer, called an electric bonder, capable, among other things, of accomplishing bonding in the manner claimed by plaintiff's patented process.

It seems obvious, from the papers now presented, that the information thus obtained by defendants from the publication by plaintiff, prompted the claim, new to them, that their Mogul transformer could accomplish what plaintiff's "fuse bond" unit would do. It obviously made no difference that such accomplishment would require the appropriation of plaintiff's patented process. Defendants went ahead and developed the obvious infringement which was enjoined in the Kenyon case.

That defendants used plaintiff's process in demonstrating their transformer and teaching others how to use it for that purpose is not denied. Nor is it denied that in divers ways they have advertised their transformer for use in the process claimed in the patent, have issued instructions how it could be so used, have had their representatives practice and demonstrate the process, have advised purchasers and potential purchasers of their transformer that no license was required to practice the process, that the validity of the patent was doubtful, and have promised to hold those practicing the process with their transformer harmless from whatever consequences might follow.

■ Obviously defendants have directly infringed the patent and should be enjoined from so doing. Harvey Hubbell Inc. v. General Electric Co., 2 Cir., 267 F. 564–571; Westinghouse E. & M. Co. v. Precise Mfg. Corporation, 2 Cir., 11 F.2d 209–212.

■ Infringement, direct or contributory, is a tort, the invasion of a right of the patentee. Carbice Corporation of America v. American Patents Dev. Corporation, 283 U.S. 27–33, 51 S.Ct. 334, 75 L.Ed. 819.

■ Defendants contend, notwithstanding this admitted previous practice, that no claim for contributory infringement can be sustained. It urges that plaintiff has used its process patent to enforce the purchase by others of its unpatented "fuse bond" unit, and, therefore, runs foul of the principle stated in the Mercoid case. As proof of this they annex to their opposing papers a copy of the license granted by plaintiff. The publicity in the Metco News had clearly stated that the fuse bond equipment was not sold outright and that the process was available under a license. The license fixes a monthly rental of $6. for the unit, and a monthly license charge of $51. per unit. The user is given the right of obtaining a process license "on equipment furnished by the user, independent of the above stated equipment rental * * * upon written application" to plaintiff. The rental is placed at $6. on the theory that the life of the fuse unit would be five years and in that period of time its total cost—$360—would have been paid by the rental. The license charge is based upon the full load amperage capacity of the transformer unit and is to be paid whether the unit is used to its full capacity, or less, or not at all.

Defendants have, in my judgment, failed entirely to sustain this contention. Nowhere does it appear, as it did in the Mercoid case, that the use of the process is contingent upon the rental of plaintiff's unit. The license agreement is to the contrary. It does not appear that plaintiff has refused a license unless its unit is

used. In the Mercoid case the patent was held unenforceable because the exclusive licensee conditioned the grant of a license to the use of unpatented stoker switches made by and purchased from it. The case held there could be no enforcement against contributory infringement under such circumstances; and it was said at page 669 of 320 U.S., at page 273 of 64 S.Ct., 88 L. Ed. 376, "The result of this decision, together with those which have preceded it, is to limit substantially the doctrine of contributory infringement. What residuum may be left we need not stop to consider. It is sufficient to say that in whatever posture the issue may be tendered courts of equity will withhold relief where the patentee and those claiming under him are using the patent privilege contrary to the public interest."

I cannot see that that decision limits the right of this court to enjoin a bare faced infringement, and the inciting of others to pull defendants' chestnuts out of the fire, such as is here revealed by practically undisputed evidence. In fact, it almost seems to me that to call some of the acts of the defendants contributory infringement is a misnomer; they are causing and encouraging others to infringe which might well make them direct rather than contributory infringers. They have accomplished more than the mere sale of an instrument by which the patented process may be practiced; they have sold it for that express purpose. While thus they do not practice the process, they knowingly cause and promote its practice. They not only make possible the commission of the tort; they become active and joint participants in it. They do not contribute, in the ordinary sense; they jointly infringe.

Plaintiff's motion for an injunction will be granted substantially as outlined in subdivisions a, b, and c of its motion. But such injunction must not enjoin the manufacture and sale of defendants' transformer where it is to be used other than in the process claimed and outlined in plaintiff's reissue patent; and as the reissue has replaced the original patent the order should not restrain a violation of the original. That defendants claim to have, or have, ceased many of what is called contributory infringements is no reason why such injunction should not issue. And defendants' apprehension that they might violate any such injunction if they sell their transformer to licensees of plaintiff does not present a real worry. That may easily be taken care of.

Whenever their Mogul transformer is sold, they should give notice to the purchaser that it is not to be used in the practice of plaintiff's patented process except with plaintiff's consent.

In view of what has been written, defendants' motion to dismiss or to strike paragraphs 13 and 14 of the complaint is denied. The issues of contributory infringement raised thereby should not be determined in such a summary manner, but after a full hearing of the evidence.

The motion for a bill of particulars is also denied, except that plaintiff shall state on which of the claims in the patents it will rely upon the trial, and also when it gave notice to defendants of their acts of infringement and whether such notice was oral or written, and which of the defendants or their representatives they did so notify.

The order will be settled on notice.