### KRIEGER v. COLBY et al.
#### No. 13202.

United States District Court
S. D. California, Central Division.
June 19, 1952.

Fulwider & Mattingly, Robert W. Fulwider, Los Angeles, Cal., Jerry Giesler, Harold C. Holland, Beverly Hills, Cal., for plaintiff.

Mason & Graham, Samuel C. Colby, Los Angeles, Cal., for defendants.

WESTOVER, District Judge.

The defendant Maurice Colby does business in his own name and under fictitious names. He is the owner and operator of J. J. MacIntyre Sporting Goods Company and of Hollywood Athletic Company.

Defendant Colby's daughter married Eugene Roberts. Eugene Roberts and his wife organized Fluorescent Fabrics, Inc., of which corporation Eugene Roberts is president. It appears, however, that this

was a corporation in name only, as no meetings were held subsequent to the organization meeting, and no stock was issued. Roberts operated the corporation as his own business under the name of Fluorescent Fabrics, Inc., and so far as the record shows he made all decisions without consulting any supposed stockholder or corporation officer.

The defendants, Maurice Colby, J. J. MacIntyre Sporting Goods Company, Hollywood Athletic Company and Fluorescent Fabrics, Inc., had and maintained their offices in the same office building, on the same floor, and in the same area. Other than names appearing on the door, there was little to indicate, to one entering the space occupied by the defendants, where the quarters of one company ended and the premises of another began. There are no private offices. Defendant Colby testified that he did not have a private office and did not even have a desk. However, he had a table and used every desk or any desk he wanted to for his activities.

Plaintiff Rose Krieger designed a cap which, to a considerable degree, resembled a rabbit's head and face. She filed application for a design patent on what she termed a "Hep Cap." The patent was subsequently granted to her. D–162–965. She had a number of the caps made as samples and employed one, Oscar Schumann, to contact the trade relative to sale and distribution of the cap.

Schumann called upon defendant Colby and talked with him about the cap. The conversation took place in the space occupied by the premises of Colby, J. J. MacIntyre Sporting Goods Company, Hollywood Athletic Company and Fluorescent Fabrics, Inc. Schumann's conversation was with Colby individually. He left several of the caps with Colby as samples.

Subsequent to Schumann's visit, one of the caps came into the possession of Eugene Roberts. Colby denies that he turned the cap over to Roberts but suggests that Roberts might have picked up one of the caps or may have seen one of them lying around Colby's place of business. Colby also denies that he suggested to Roberts

that they take on the manufacture and sale of the caps.

After this action was filed Colby's deposition was taken, in which he admits that he called Universal Pictures to ascertain whether or not they could obtain the right to use the word "Harvey" on a cap. He was informed that permission would have to be obtained from the agent of the writer of the play, "Harvey," and that the agent was in New York; that the studio had no authority to give a license for the use of the name "Harvey." At the time of trial Colby "could not remember" having made such a telephone call to the studio.

Subsequent to the telephone call Eugene Roberts "had to go to New York on other business." While in New York he had a cap designed. He says that he did not take with him to New York one of plaintiff's "Hep Caps" but that he described to a cap maker in New York how he wished a cap made and obtained samples thereof. In New York he contacted the agent of "Harvey" and obtained a license to use the word "Harvey," for which license he paid the sum of $1,000. Also, while there he had certain labels printed, on which appeared the term "Harvey Cap." The tags also had printed upon them "patented and copyrighted."

When Eugene Roberts returned to Los Angeles he had caps made in accordance with the sample he had "designed" while in New York, which caps in all material respects were identical with plaintiff's "Hep Cap" with the exception of a slight difference in the length of the ears and the manner in which the ears were inserted in the cap. Eugene Roberts or Fluorescent Fabrics, Inc. caused the caps to be manufactured, distributed and sold.

When plaintiff learned that defendants were manufacturing and selling a cap which was a duplicate of her design, she went to see the defendant Colby in his offices. She protested to Colby about the use of her design and accused him of infringing her patent. Plaintiff gives the following resume of her conversation with Colby:

"He says to me, 'You know that there have been many designs made

and many copies.' and he did do some copying from different designs and he was sued by many people and his brother is one of the biggest lawyers in Los Angeles * * *

"Q. (by Mr. Holland): This is what he told you? A. Yes; and he also told me that Gantner Swimming suit sued him and Mr. Colby won that case and he also showed us a tie that had the patent on it and that was copied and he had just went ahead and did it because he knew that this was a beginner that designed that tie and that he will not—if he will come up to his office, then he will make some kind of arrangements but it will be under his terms, so the fellow did come up, the one that owned the design from that tie, and he said, 'What are you going to do about it?' and so Mr. Colby said, 'I will give you a penny—' I don't remember whether it was a cent per tie or one percent on the sales.

* * * * * *

"And he also showed us some trunks from fluorescent material, that this was copied, too.

* * * * * *

"About my patent, he said that he flew to the East to get a permit from the one that wrote a story 'Harvey' and he is going to use that, that name, so I told him I didn't care if he used that name 'but you can not use my design." So Mr. Colby said, 'Do you have the patent? Did you bring it in?' and I said 'no' so Mr. Colby said that he can check on patents very easily so I gave him the filing number of my patent and I said, 'You can go ahead and check' and Mr. Colby marked it down.

* * * * * *

"* * * I told Mr. Colby that I have 500 caps and he asked me where I got them from and I said, 'From Ben Cap Company.' and then he asked me how much did I pay and I told him, '$5.50 per dozen.' and he even asked me whether I would sell them to him and so, anyway, I said, 'No, because I don't want to make any kind of a deal.'

* * * * * *

"Well, Mr. Colby said that he will go ahead with that item and I can go ahead and do whatever I please.

"* * * Mr. Colby said he is going to check whether I have a patent or I don't have a patent and if I have a patent he is going to do something and possibly he will sign up with his terms and I don't care to make any kind, sign up—

* * * * * *

"* * * Mr. Colby said that he is going to continue with this cap like that because he has done things like that before and he will do it again and he knows beginners don't have any money and so on, and he has been sued by big companies before and he won the case.'"

Plaintiff's version of the conversation was not denied by defendant Colby.

Defendants refused to cease and desist from the manufacture and sale of the caps in question, and thereafter this action was commenced.

Defendants insist plaintiff's cap was not submitted "in confidence." Evidently defendants feel that if a patented article, or an article for which a patent has been applied, has not been submitted "in confidence", they have a right to copy and duplicate that article.

Also, defendants contend that inasmuch as no patent had been issued to plaintiff at the time the cap was submitted to them by Schumann, it was their feeling "that the design was not of a patentable nature." They contend further that after receiving notice of the issuance of the patent to plaintiff they "honestly believed that it was invalid" and that the state of prior art was "such as to warrant defendants in having an honest doubt as to whether the patent was valid."

From the evidence adduced at the time of trial, this Court is of the opinion that defendants did not honestly believe the patent was invalid and that they did not have an honest doubt as to its validity. It is this Court's opinion that there was an attempt made by defendants to dishonestly appropriate plaintiff's design. The Court is unable to find anything honest about the de-

fendants' relationship with plaintiff in the entire transaction.

We are of the opinion that plaintiff's patent in question is a valid patent and was deliberately infringed by defendants, who intended to appropriate the design without paying to plaintiff any royalty or other consideration.

The officers of Fluorescent Fabrics, Inc. were not made parties defendant in this case, and its president (Eugene Roberts) was not served with summons and complaint as an individual. However, Roberts was in attendance at the time of trial herein and testified. Although he was not named personally as a defendant, nevertheless, he actively participated in the litigation. A judgment rendered against Fluorescent Fabrics, Inc. will probably be a nullity, as the testimony indicates the corporation at the present time is insolvent. At no time did the corporation have a substantial credit standing, for when merchandise was purchased it was ordered through the name of Hollywood Athletic Company and billed to Hollywood Athletic Company, which company paid the statements as rendered. Fluorescent Fabrics, Inc. would repay the Hollywood Athletic Company for the merchandise so purchased, if and when able to do so.

At the close of the trial plaintiff moved the Court that Eugene Roberts be substituted for Doe I in the complaint as a named party defendant. The motion was based upon the fact that the true relationship between the defendant corporation and Eugene Roberts was not known and did not appear until late in the case. The motion was taken under submission. Thereafter plaintiff filed a written notice of motion and motion to file amended complaint to conform to the evidence, setting forth that Eugene Roberts was a necessary party to a complete determination of the cause and that to add him as a party defendant in these proceedings would avoid future litigation resulting in a multiplicity of suits.

It appears to the court that if judgment is rendered herein against the corporation and thereafter an action is filed against Eugene Roberts individually to establish the liability of the judgment against him personally, under the testimony as adduced at the trial herein such action would be successful. Fed.Rules Civ.Proc. Rule 21, 28 U.S.C.A. states that parties may be added by order of court on motion of any party, or of its own initiative, at any stage of the action on such terms as are just.

Oral motion heretofore made by plaintiff (which was followed by written motion) to file an amended and supplemental complaint to add Eugene Roberts as a party defendant was granted by the court. Subsequently Eugene Roberts filed answer and stipulated in open court that all the evidence theretofore adduced might be considered in determining the liability of defendant Eugene Roberts.

Defendant Colby insists that he is not responsible, as an individual, and that the only culpable party is the corporation Fluorescent Fabrics, Inc. Colby says that he had a contract with his daughter's and son-in-law's corporation by which Colby was to be an advisor only and was to receive ten percent of the corporation's profits in his advisory capacity; that he did not receive anything from the corporation, because it never made any money. However, it is interesting to note that when Colby's deposition was taken he did not emphasize his advisory capacity until *after* the deposition was transcribed and submitted to him. The following is a typical example of the changes made by Colby in his deposition after its transcription:

"A. I contracted with them to act as advisor regarding ~~sell~~ the various products that they originated— they, the Fluorescent Fabrics, Inc., designed and created. I contracted to act as advisor ~~sell them~~ through their ~~my~~ selling organization and receive ~~return them~~ a profit of 10 per cent of the profits derived from the sale of their products.

\*  \*  \*  \*  \*  \*

"A. That is right. They entered into a contract with me to advise in the sale of ~~to sell~~ their products.

\*  \*  \*  \*  \*  \*

"Q. (By Mr. Holland): Now, you say your part in the Harvey Cap was to have them manufactured, that is

cause them to be manufactured; is that correct? A. ~~Yes~~. I advised in their manufacture."

Colby insists he had nothing to do with the infringement, the manufacture of the caps, or the sale thereof. He does admit that Hollywood Athletic Company purchased a number of the caps from Fluorescent Fabrics, Inc. and sold them.

■ The person who infringes a patent is committing a tort, 69 C.J.S., Patents, § 42; Lincoln Engineering Co. of Illinois v. Stewart-Warner Co., 7 Cir., 91 F.2d 757, and Metallizing Engineering Co. v. Metallizing Co. of America, D.C., 62 F.Supp. 274, and from the evidence adduced herein it seems to this Court that Colby is a joint tort-feasor.

Plaintiff contends she is entitled to compensatory damages of not less than a reasonable royalty. On the other hand, it is defendants' contention that plaintiff's only measure of recovery would be $250 plus any profits derived by defendants from the alleged infringement over and above $250.

Defendants at the time of trial testified there had been no profits, and as a consequence their theory is that damages, if any, should be limited to $250. Defendant Fluorescent Fabrics, Inc. presented a profit and loss statement to the Court in which it was disclosed that in estimating profits from the caps manufactured and sold, one of the items of expense was the one thousand dollars paid for the right to use the word "Harvey."

Defendants contend plaintiff's right of recovery depends upon Section 74 of the Patent Act, 35 U.S.C.A., specifically referring to design patents. Section 74, in part, provides:

"* * * Any person violating the provisions * * * of this section, shall be liable in the amount of $250; and in case the total profit made by him from the manufacture or sale, * * *, exceeds the sum of $250, he shall be further liable for the excess of such profit over and above the sum of $250."

Section 70 provides, in part, as follows:

"The several courts vested with jurisdiction of cases arising under the patent laws shall have power to grant injunctions according to the course and principles of courts of equity, to prevent the violation of any right secured by patent, on such terms as the court may deem reasonable; and upon a judgment being rendered in any case for an infringement the complainant shall be entitled to recover general damages which shall be due compensation for making, using, or selling the invention, not less than a reasonable royalty therefor, together with such costs, and interests, as may be fixed by the court. The court may in its discretion award reasonable attorney's fees to the prevailing party upon the entry of judgment on any patent case."

It will be noted that § 70 does not limit itself to mechanical patents only. Section 70 says:

"* * *; and upon a judgment being rendered *in any case* for an infringement * * *." [Emphasis supplied.]

And, also, relative to attorney's fees:

"The court may in its discretion award reasonable attorney's fees to the prevailing party upon the entry of judgment on *any patent case*." [Emphasis supplied.]

We see nothing in § 70, and nothing is found in the decisions, to indicate design patents have been excluded from the scope of § 70.

Section 75 of the Act provides, in reference to § 74:

"Nothing in section 74 of this title contained shall prevent, lessen, impeach, or avoid any remedy at law or in equity which any owner of letters patent for a design, aggrieved by the infringement of the same, might have had if section 74 of this title had not been passed; but such owner shall not twice recover the profit made from the infringement."

■ From a reading of the patent law itself, this Court will have to find that re-

covery of plaintiff in this case is not limited to $250 and profits, as set forth in § 74, but that § 70 applies to all patents, including design patents, and that as a consequence the plaintiff in this case shall be entitled to general damages which shall be due compensation for making, using, or selling the invention, not less than a reasonable royalty therefor.

Defendants argue that if damages are assessed upon the basis of royalty, a reasonable royalty would be five percent. However, it will be noted that in the conversation which plaintiff had with Colby, as hereinbefore set forth, plaintiff demanded a ten percent royalty, and Colby countered with an offer of five percent, which offer plaintiff refused to accept. It would be strange indeed if a patentee demands ten percent royalty (which demand is refused and a counter-offer of five percent made by the infringer) and the infringer then proceeds to deliberately violate the patent, that the patentee should be forced to accept the infringer's contention that a reasonable royalty is the five percent offered by him and not the ten percent requested by patentee.

■ If damages were assessed on a basis of royalty, this Court would have to find that a minimum royalty would be the amount as demanded by plaintiff herein. Defendants admit gross sales in the amount of $8,640. A ten percent royalty based upon such gross sales would be $864. However, it appears defendants paid $1,000 for the right to use the name "Harvey," and it would seem to this Court that if the use of the name "Harvey" on a cap which had been patented was worth $1,000, the use of the design itself should certainly be worth at least as much. As a consequence, the Court will assess general damages in this case at $1,000.

Plaintiff contends she is also entitled to damages under § 50 of the Patent Act which, in part, provides as follows:

"Every person who, * * *

* * * * * *

"* * * in any manner, marks upon or affixes to any unpatented article the word 'patent,' or any word import-

ing that the same is patented, * * * shall be liable, for every such offense, to a penalty of not less than $100, with costs; one-half of said penalty to the person who shall sue for the same, and the other to the use of the United States, to be recovered by suit in any district court of the United States within whose jurisdiction such offense may have been committed."

Evidence in the case at bar indicates that Eugene Roberts, president of defendant Fluorescent Fabrics, Inc., while in New York, designed a tag which was subsequently affixed to the caps manufactured and sold by defendants. The tags had imprinted upon them the word "patented." Defendant Roberts testified that when he caused the tags to be designed, and used the word "patented" thereon, he was referring to the play "Harvey" or to the character "Harvey," as he thought a patent had been issued either for the play or for the character. However, the statute says:

"Every person who, * * * *in any manner,* marks upon or affixes to any unpatented article the word 'patent,' * * *"

is subject to the penalty.

The Court is not inclined to rely upon the statement of Roberts but feels this is simply another indication of a deliberate intent to appropriate the design patent and to indicate to the general public that a patented article is being offered for sale.

Though some articles may be stamped innocently, if they are stamped with a guilty purpose, the offense is committed. Nichols v. Newell, C.C.Mass. 1853, 18 Fed. Cas.No. 10,245, p. 199.

A person who marks as patented an unpatented article is not liable to the penalty prescribed by this section, unless he does so knowing that he has no right to do so, with the intention of deceiving the public. London v. Everett H. Dunbar Corp., 1 Cir., 179 F. 506.

The presumption is, until the contrary appears, that the mark was placed on the article with the intention to deceive. Oliphant v. Salem Flouring Mills Co., 18 Fed. Cas.No. 10,486, p. 647.

Plaintiff originally contended that she would be entitled to a penalty upon each sale or upon the affixing of a tag to each cap. However, this is not the law. The section does not prescribe a distinct penalty for each individual article marked, but merely for the offense of marking; and to authorize the recovery of more than a single penalty the proof must be sufficiently specific as to time and place and circumstances to show a number of distinct offenses of marking, although it need not show the specific date of each. London v. Everett H. Dunbar Corp., supra.

Defendants argue that the evidence adduced herein does not show any false marking, inasmuch as the false marking must be affixed to the article itself.

The evidence indicated Roberts designed and had printed labels on which the word "patented" was used. These tags were attached to the caps, and the defendants maintain that the attaching (by a string to the caps) of tags on which the word "patent" or "patented" is imprinted, is not false marking, under the statute, inasmuch as the false marking must be imprinted upon the article itself. Defendants cite only one case to sustain their contention—Smith v. Walton, 51 F. 17, 18, which was decided by the District Court of the Southern District of New York on June 20, 1892. It does not appear that since 1892 the Federal courts have had occasion to pass upon this subject.

However, it seems to this Court that the Smith v. Walton case, supra, can be distinguished from the case at bar since, in that case, the patented article (wooden dishes) were packed in crates and on the crates was affixed the word "patented." There was no attempt to affix by tag or otherwise the word "patented" on each individual article; but the patented articles were placed in crates, and the crates themselves were marked. The Court said, with reference to this matter:

"* * * The complaint does not aver that the word 'Patented' was marked upon the dishes themselves, but only upon the crates containing the dishes.

*      *      *      *      *      *

"It is difficult to construe the stamping of the word 'Patented' on a crate containing wooden dishes to be either a marking of that word *upon* the dishes, or *affixing* it to them. The general public, for whom the mark is designed by the statute, never get the benefit of such a stamping. They do not buy by the crate. *The case is wholly different from marks on the labels or covers that are attached to articles sold and accompany them to the consumers.* A mark on a crate is, therefore, outside of the law, both in letter and in spirit." [Emphasis supplied.]

Roberts testified that caps were ordered from various manufacturers and were delivered at various times; that when the caps were delivered, he and his wife then affixed the tags. This Court is at a loss to understand how the affixing to an article of a tag on which is imprinted the word "patented" and which accompanies the article up to and during the sale, does not come within the statute and, therefore, must find the caps in question were illegally marked.

According to Roberts' testimony, eight separate shipments were received on different days, to which labels were attached by him and his wife. It appears from the testimony of Roberts himself that there were at least eight times when labels were affixed and, as a consequence, eight different offenses for which a penalty of $100 each could be assessed, making a total liability of $800 for false marking—$400 of which must go to the United States of America. The Court will hold that under this phase of the problem the liability for false marking is $800.

This action was commenced to obtain an injunction against defendants and damages for infringement of the patent. The injunction should issue against all the defendants; and inasmuch as defendant Colby is one of the defendants against whom the injunction should issue, then attorney's fees should also be assessed against him.

The award of attorneys' fees is solely within the jurisdiction of the court. The Circuit Court of this circuit, in the case of Park-in-Theatres v. Perkins, 9 Cir.,

190 F.2d 137, 138, points out that if attorneys' fees are awarded in a patent case, they should be "based upon finding of unfairness or bad faith in conduct of losing party, or some other equitable consideration of similar force". It is difficult to imagine a case where defendants' conduct could be more reprehensible than in the case at bar or could more clearly meet the requirement of "unfairness or bad faith". This Court has hereinbefore found that defendants knowingly and deliberately infringed plaintiff's patent. If ever in a patent case attorneys' fees are to be awarded, they certainly should be awarded in the case at bar.

 Plaintiff was represented by Messrs. Robert W. Fulwider and Harold C. Holland. Mr. Holland filed an affidavit to the effect that he spent three days in the trial of the case, three days in preparation for trial, and three days investigating the facts—a total of nine days. Mr. Fulwider filed a similar affidavit, showing that he spent nine days in the preparation and trial of the case. As a result, we have a total of eighteen days spent by reputable legal practitioners. They assert that a reasonable value for attorneys' fees in this case would be $250 per day. It appears from fee schedules published by various bar associations that a minimum sum to be allowed for attorneys' fees in the trial of a case is $150 per day. It may well be that attorneys in a patent case are entitled to more than counsel handling other litigation. The court feels that a reasonable amount to be allowed as atttorneys' fees in this case for both attorneys involved is the sum of $3,000—or $1,500 each.

Inasmuch as the Court is of the opinion that defendant Colby and defendant Eugene Roberts are joint tort-feasors, judgment shall be rendered against them individually for general damages and attorneys' fees.

As it appears that defendant Colby had nothing to do with the false labeling, judgment for $800 shall be rendered against Eugene Roberts and Fluorescent Fabrics, Inc. One-half of the $800 is to be paid to the United States of America and one-half, or $400, is to be paid to plaintiff herein.

The Court finds that judgment for damages shall be rendered as follows:

(1) $1,000 general damages against all defendants in the action, including Eugene Roberts.

(2) $800 against Eugene Roberts and Fluorescent Fabrics, Inc, for false labeling.

(3) $3,000 attorneys' fees against all defendants, including Eugene Roberts.

This opinion is adopted as findings of fact and conclusions of law; but permission is granted to plaintiff to file additional or supplemental findings of fact and conclusions of law, if she so desires, which shall be presented to this Court on or before the tenth day following the date of this opinion.