**LAUGHLIN PRODUCTS, INC.,**
**et al., Plaintiffs**

v.

**ETS, INC., et al., Defendants.**

**No. Civ.A. 4:01–CV–792–Y.**

United States District Court,
N.D. Texas,
Fort Worth Division.

Nov. 4, 2002.

Evelyn R. Leopold of Cantey & Hanger, Fort Worth, Tex., Michael A. O'Neil, Dallas, Tex., for plaintiffs.

Nicole T. LeBoeuf of Lawson Fields McCue Lee & Campbell, Addison, Tex, John McNett, Charles J. Meyer, and Spiro Bereveskos of Woodard Emhardt Naughton Moriarty & McNett, Indianapolis, Ind., for defendants.

*ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

MEANS, District Judge.

Pending before the Court are two motions: (1) defendant ETS, Inc.'s Cross–Motion for Summary Judgment [doc. # 51–1], filed July 29, 2002; and (2) plaintiffs Laughlin Products, Inc. ("Laughlin") and Mist–On Systems, Inc. ("Mist–On Systems")'s Motion for Partial Summary Judgment [doc. # 65–1], filed September 11, Having carefully considered the motions, responses, and replies, the Court finds that the plaintiffs' motion should be DENIED and the defendant's motion should be GRANTED.

On September 27, 2001, the plaintiffs [1] filed this suit against the defendant,[2] alleging the following causes of action: (1) false or misleading description of fact or representations in violation of 15 U.S.C. § 1125(a) ("count one"), (2) false marking in violation of 35 U.S.C. § 292(a) ("count two"), and (3) common-law unfair competition ("count three"). The plaintiffs, in their motion for partial summary judgment, are seeking summary judgment as to counts one and two. The defendant, in its cross-motion for summary judgment, is seeking summary judgment as to all three counts.

## I. RELEVANT BACKGROUND

On September 22, 2000, the defendant filed a patent application on its Sunless Express tanning booth.[3] The United States Patent Office, on May 21, 2001, entered a notice indicating that ETS's patent application had "been examined and is allowed for issuance as a patent." The patent was not, however, actually issued until October 16.

---

1. This suit was originally filed by Laughlin. However, Mist–On Systems was added as a plaintiff on September 5, 2002, when Laughlin filed a Second Amended Complaint.

2. There were originally three defendants in this case: (1) ETS, Inc., (2) Trevor Gray, and (3) Edna Gray. In an order issued on May 24, 2002, the Court dismissed Trevor and Edna Gray from the suit for lack of personal jurisdiction. Consequently, the Court will not address any claims against the Grays. In addition, the plaintiff also brought a cause of action against the defendant for false designation of origin, which was dismissed by the Court in an order dated June 24, 2002.

3. This product, along with a similar product designed and sold by the plaintiffs, is a tanning system that allows people to tan without being exposed to ultraviolet light.

In July 2001, three months prior to the actual issuance of the patent, ETS introduced its Sunless Express tanning booths at a trade show in Las Vegas, Nevada. ETS distributed approximately 100 pamphlets there that stated that the Sunless Express tanning booth used a "patented" gravity footwash for an even coverage. A different brochure referred to the booth as the "patented Sunless Express Spray Spa." The defendant's website contained similar statements.[4]

After returning from the trade show and in response to questions received there from Thomas Laughlin,[5] the defendant amended its brochures to use only the phrase "patent pending" until its patent actually issued. In addition, after the filing of the plaintiffs' complaint, the defendant changed the wording on its website to "patent pending."

The plaintiffs claim that the original statements by the defendant regarding the patent status of its booth were false when they were made. The defendant, on the other hand, asserts that these statements are not false because the footwash did contain a component, a nozzle, that was patented at the time of the trade show and that the booths were patented by the time the defendant actually shipped any of the booths to its customers.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the record establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is considered "genuine" if "it is real and substantial as opposed to merely formal, pretended, or a sham." *Bazan v. Hidalgo Cty.*, 246 F.3d 481, 489 (5th Cir.2001) (citing *Wilkinson v. Powell*, 149 F.2d 335, 337 (5th Cir.1945)). Facts are considered "material" if they "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To determine whether there are any genuine issues of material fact, the Court must first consult the applicable substantive law to ascertain what factual issues are material. *Lavespere v. Niagara Mach. & Tool Works*, 910 F.2d 167, 178 (5th Cir.1990). Next, the Court must review the evidence on those issues, viewing the facts in the light most favorable to the nonmoving party. *Id.; Newell v. Oxford Mgmt. Inc.*, 912 F.2d 793, 795 (5th Cir.1990); *Medlin v. Palmer*, 874 F.2d 1085, 1089 (5th Cir.1989).

In making its determination on the motion, the Court must look at the full record including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. *See* FED. R. CIV. P. 56(c); *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir.1988). Rule 56, however, "does not impose on the district court a duty to sift through the record in search of evidence to support" a party's motion for, or opposition to, summary judgment. *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n. 7 (5th Cir.1992). Thus, parties should "identify specific evidence in the record, and ... articulate" precisely how that evidence supports their claims. *Forsyth v. Barr*, 19 F.3d 1527, 1536 (5th Cir.1994). Still, the Court's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.

---

4. In addition, the July 2001 issue of *Today's Image* magazine included a one-page Sunless Express advertisement that included the phrase "Patented 'gravity' foot wash for even coverage."

5. Thomas Laughlin is the sole shareholder and president of both Laughlin and Mist–On Systems, Inc.

*See Anderson,* 477 U.S. at 249, 106 S.Ct. 2505.

To prevail on a motion for summary judgment, the moving party has the initial burden of demonstrating that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A defendant moving for summary judgment may submit evidence that negates a material element of the plaintiff's claim or show that there is no evidence to support an essential element of the plaintiff's claim. *See Celotex Corp.,* 477 U.S. at 322–24, 106 S.Ct. 2548; *Crescent Towing and Salvage Co. v. M/V ANAX,* 40 F.3d 741, 744 (5th Cir.1994); *Lavespere,* 910 F.2d at 178.

■ To negate a material element of the plaintiff's claim, the defendant must negate an element that would affect the outcome of the action. *See Anderson,* 477 U.S. at 247, 106 S.Ct. 2505. If the defendant moves for summary judgment alleging no evidence to support an essential element of the plaintiff's claim, the defendant need not produce evidence showing the absence of a genuine issue of fact on that essential element. Rather, the defendant need only show that the plaintiff, who bears the burden of proof, has adduced no evidence to support an essential element of his case. *See Celotex,* 477 U.S. at 325, 106 S.Ct. 2548; *Teply v. Mobil Oil Corp.,* 859 F.2d 375, 379 (5th Cir.1988).

■ When the moving party has carried its summary-judgment burden, the respondent must go beyond the pleadings and by its own evidence set forth specific facts showing there is a genuine issue for trial. Fed.R.Civ.P. 56(e). This burden is not satisfied by creating some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. *See Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *See Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505.

### III. DISCUSSION

A. *COUNT ONE: False or Misleading Description of Fact or Representations in Violation of 15 U.S.C. § 1125(a)*

■ Section 43(a) of the Lanham Act, 15 U.S.C. § 1125, states:

> Any person who … in commercial advertising or promotion, misrepresents the nature, characteristics, quality, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Courts have interpreted this section of the Lanham Act as "providing 'protection against a myriad of deceptive commercial practices, including false advertising or promotion.'" *Pizza Hut, Inc. v. Papa John's Int'l, Inc.* 227 F.3d 489, 495 (5th Cir.2000) (quoting *Seven–Up Co. v. Coca–Cola Co.* 86 F.3d 1379, 1387 (5th Cir.1996)). In order to prove a *prima-facie* case of false advertising under section 43(a), the plaintiff must demonstrate the following: (1) a false or misleading statement of fact about a product; (2) such statement either deceived, or had the capacity to deceive a substantial segment of potential customers; (3) the deception is material, in that it is likely to influence the consumer's purchasing decision; (4) the defendant caused the false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the statement at issue. *See Logan v. Burgers Ozark Country Cured Hams, Inc.* 263 F.3d 447, 462 (5th Cir.2001); *see also Pizza Hut, Inc.,* 227 F.3d at 495 (stating that the

fourth element is that the product entered interstate commerce). "The failure to prove the existence of any element of the prima facie case is fatal to the plaintiff's claim." *Pizza Hut, Inc.*, 227 F.3d at 495.

In this case, assuming without deciding that the plaintiffs have established the existence of the first four elements, there is no proof that the plaintiffs have been or are likely to be injured **as a result of** the false statements. Under this element, the plaintiffs must show both "likely injury and a causal nexus to the false advertising." *Ortho Pharmaceutical Corp. v. Cosprophar, Inc.* 32 F.3d 690, 694 (2d Cir.1994). "The likelihood of injury and causation will not be presumed, but must be demonstrated in some manner." *Id.* at 694. This issue was thoroughly analyzed in 2001 by the United States District Court for the Western District of Texas in *Healthpoint, Ltd. v. Stratus Pharmaceuticals, Inc.* No. SA–00–CA–726–PM, 2001 WL 1682948, *8–*10 (W.D.Tex. Nov. 29, 2001). In that case the Court stated:

Because the Fifth Circuit has not held that a presumption of causation and harm is applicable to a product label and because other circuits have declined to apply the presumption in instances in which a direct competitor engages in false non-comparative advertising, the Court is unwilling to conclude as a matter of law that a presumption of causation and injury is applicable to the facts of the case. . . . Because Stratus may not rely on a presumption of causation and injury and has presented no evidence to raise a genuine issue of material fact on that element of its false advertising claim, Healthpoint is entitled to summary judgment on Stratus' false advertising claim. . . .

*Id.* at *10, 2001 U.S. Dist, LEXIS 22470.

In their complaint, the plaintiffs claim that they are "likely to be damaged by ETS's false claim." (Pl.'s Second Am.

Compl. at 5.) In support of this allegation, the plaintiffs point to three pieces of evidence: (1) a letter from Tim and Marie Ralston ("the Ralstons"); (2) a declaration from Thomas Laughlin; and (3) sales charts and summaries. The letter from the Ralstons, dated August 22, 2001, states:

It has come to our attention that a company, ETS, out of Indianapolis will be bringing to market a similar mist on tanning system to Mist On's patented system. As you are aware, we have been courting a prominent interested investment group out of Arizona to distribute the Mist On systems to Europe in addition to expanding locally here in Arizona. The potential investment that has been placed on hold amounts to 2.2 million U.S. dollars.

Because of this recent development, we, as well as our investors, are experiencing doubt and hesitation to move forward. Additionally, our intentions of purchasing the rights to Arizona have been placed on hold until we know the outcome of this potential market threat. Not only are we concerned about market saturation, but mismanaged locations or poor results from these new machines can damage the entire sunless mist on concept thus inhibiting business.

We would like to request an update on any developments that may assist us in determining what course of action we need to take.

(Pl.'s App. at 72.)

This letter, however, does not provide the necessary link between the defendant's allegedly false advertising and possible harm to the plaintiffs. The letter does not mention ETS's claim of a patent or indicate or imply that the patent claim had any bearing on the Ralstons' insecurity as to the plaintiffs' product nor even indicates that the Ralstons had seen one of the allegedly misleading or false statements.

Instead, this letter merely shows that the Ralstons have learned of the defendant's product and are concerned that the defendant's product is a source of competition to the plaintiffs' product. Furthermore, the defendant has provided evidence from the plaintiffs' own files that the Ralstons' letter was written in response to advertising materials issued by the defendant that do not contain the allegedly false or misleading statements, but instead correctly claims that the defendant's product has a "patent pending." (Def.'s App. to Resp., Ex. 8, p. 153; Tom Laughlin's Dep., Def.'s App. to Resp., Ex. 7 at 151–52.[6])

■ With respect to the other two pieces of evidence, Thomas Laughlin, in his declaration, states:

As a result of ETS, Inc.'s false advertising at the Las Vegas Tanning Expo, numerous attendees of the show, all of whom were also potential customers of both ETS, Inc., and [Mist–On Systems] communicated to me their confusion and uncertainly about whether ETS, Inc. in fact had a patented system, and communicated to me their loss of confidence in

my credibility relating to LPI's patent position.

As a result of the consumer confusion observed above, [Mist–On Systems] experienced significant lost sales. My estimation of lost sales during the time in which ETS, Inc. falsely advertised their products as patented is attached hereto as Exhibit A.

(Pl.'s App. at 58.) In addition, the plaintiffs allege that their sales charts "show that [Mist–On Systems] suffered significant lost sales during the relevant time period." (Pls.' Br. at 6.) After reviewing these materials, the Court concludes that they also fail to establish a link between the allegedly false or misleading advertising statements by the defendant and any injury or likely injury to the plaintiffs. To begin with, Thomas Laughlin's statements in his declaration are conclusory and not supported by the evidence. The Court is not convinced that the plaintiffs' sales charts show that they suffered **significant** lost sales during the period from July 2001, when the allegedly false advertising occurred, and October, when the defendant's patent was actually issued.[7] Even

**6.** With respect to this issue, the deposition transcript of Tom Laughlin states:

Q: Now, all the information Mr. Ralston had that he faxed to you all states "patent pending," correct?

A: This information right here is–only says "patent pending."

Q: And that was a legitimate thing for ETS to say; is that correct?

A: Yes. However, having come after the other statements when they made the patented claim, the investment company was adequately confused and they did not any longer want to proceed. It became gray.

Q: But at least the materials that Mr. Ralston actually had copies of that be sent to you all correctly just state "patent pending"?

A: The information in this little packet all correctly say "patent pending." I don't–I don't have any reasons to believe that was all the information he had. As a matter of fact, I think quite the contrary. He had a pretty–

most likely has a pretty extensive file on this subject. This happens to be what ended up in my file, actually of financial stuff.

Q: Okay. If he had sent you the brochure from the Las Vegas show, you probably would have put it in the file for Mr. Ralston, wouldn't you?

A: Not necessarily, I guess, but I don't know if he–I don't think he was ever sent a copy of that brochure, per se. He wrote that letter that you'd read earlier.

**7.** One chart titled "US/Canadian Sales Bi-monthly" indicates that in the period from July to August 2001, the plaintiffs had approximately 7 sales. In the period from September to October, the plaintiffs had approximately 4 sales. (Pl.'s App. at 71.) This fluctuation of 3 sales from July to October is consistent with fluctuations in sales in periods prior to July and after October. In addition, another chart titled "Monthly U.S. &

assuming that these charts show that the plaintiffs suffered significant losses, there is absolutely no evidence, beyond Thomas Laughlin's conclusory and speculative allegations, that links any loss in sales to the defendant's allegedly false advertising.[8] Because the plaintiffs have failed to establish a link between the allegedly false or misleading advertising statements and their damage from, or likelihood of being damaged by, such statements, the defendant is entitled to summary judgment on this claim.[9]

B. *COUNT TWO: False Marking in Violation of 35 U.S.C. § 292(a) & (b)*

■ The patent marking statute, 35 U.S.C. § 292, states:

> Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word "patent" or any word or number importing that the same is patented, for the purpose of deceiving the public; [ ]
>
> . . . .
>
> Shall not be fined more than $ 500 for every such offense.
>
> (b) Any person may sue for the penalty, in which event one-half shall go to the person suing and the other to the use of the United States.

35 U.S.C.A. § 292 (West 2001). In order to prevail on its claim, the plaintiff must show that " 'the advertising or use of the word 'patented' [is] made in conjunction with a device which is not patented and [with] an intent to deceive.' " *M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., Inc.,* 68 F.Supp.2d 494, 504 (D.N.J. 1999) (quoting *Sadler–Cisar, Inc. v. Commercial Sales Network, Inc.,* 786 F.Supp. 1287, 1296 (N.D.Ohio 1991)); *see Arcadia Machine & Tool, Inc. v. Sturm, Ruger & Co., Inc.,* 786 F.2d 1124, 1125 (Fed.Cir. 1986); *Johnston v. Textron, Inc.,* 579 F.Supp. 783, 795 (D.R.I.1984) (noting "prerequisite for a violation of [§ 292] is a finding of an intent to deceive"). "[The plaintiff] has the burden of showing that the defendant acted with the specific intent to deceive." *M. Eagles Tool Warehouse,* 68 F.Supp.2d at 505; *see Sadler–Cisar,* 786 F.Supp. at 1296; *Roman Research, Inc. v. Caflon Co., Inc.,* 210 U.S.P.Q. 633 (D.Mass. 1980) (stating that the statute is penal in nature, must be construed strictly, and intent will not be inferred from facts that show the incorrect patent marking was the result of mistake or inadvertence).

■ The plaintiffs, relying on a 1952 case from the Southern District of California, *Krieger v. Colby,* 106 F.Supp. 124, 130(S.D.Cal.1952), claims that the "intent to deceive is presumed until contrary evidence is shown." [10] (Pl.'s Mot. at 5.) However, after reviewing the recent caselaw

Canadian Sales" shows that the plaintiffs sold approximately 4 units in July 2001, 3 in August, 4 in September, and 1 in October. (Pl.'s App. at 69.) Once again, such fluctuations, when compared to other time periods, do not appear to be inconsistent or unusual.

The plaintiffs, in their reply, claim that the summaries indicate that Mist–On Systems made the following sales within the United States and Canada: 3 units in July 2001, 4 in August, 1 in September, 2 in October, 2 in November, 0 in December, 1 in January 2002, 0 in February, and 8 in March. However, after reviewing this "summary", the Court notes that there is a "Total Purchased" column that indicates that the following "total sales" were made: 3 units in July 2001, 5 in August, 1 in September, 3 in October, 2 in

November, 8 in December, 1 in January 2002 and 0 in February (Pl.'s App. at 68.)

8. Without more evidence, it is just as likely that the cause of any losses experienced by the plaintiffs at this time was the tragedy of September 11, 2001.

9. *Cf. King v. Ames,* 179 F.3d 370, 375 (5th Cir.1999) (affirming the district court's grant of summary judgment on the Lanham Act claim because it found that the record is "devoid of any facts bearing upon the issue of injury").

10. In *Krieger,* the Court, relying on a 1878 case that described the act of placing the word patent on a non-patented item as a

cited in the preceding paragraph, the Court concludes that the plaintiffs have the burden of proving that the defendant acted with the specific intent to deceive.[11] Even assuming that the defendant mismarked its product as "patented," the plaintiffs fail to provide any evidence that the defendant acted with the specific intent to deceive in advertising that its product had a patented footwash and was itself patented. The defendant, on the other hand, has presented affidavits from its marketing personnel, who created the questionable advertising brochures and website, indicating that they were unfamiliar with the legal aspects of patents and had no intention of misleading, confusing, or deceiving the public with respect to the use of the word "patented." (*See* Hartlieb Aff. at 4, Armstrong Aff. at 2.) In addition, the defendant has indicated that as soon as the questionable use of the word "patented" was brought to its attention, it changed its advertising brochures to correct any perceived problems. Because the plaintiffs have not presented any evidence that the defendant acted with a specific intent to deceive and has not therefore raised a genuine issue of material fact with

respect to that element, the defendant is entitled to summary judgment on this issue.

## C. COUNT THREE: *Common Law Unfair Competition*

 With respect to this count, the plaintiffs allege that the "acts of the defendants constitute unfair competition,[12] palming off,[13] unjust enrichment, and misappropriation of Laughlin's rights in that such acts permit, and will continue to permit the defendants to use and benefit from the goodwill and reputation earned by Laughlin to obtain a ready customer acceptance for goods sold by the defendants on the basis of a reputation not established in the defendants's [sic] own right, and to give the defendants's [sic] services a saleability they otherwise would not have, all at the expense of Laughlin." (Pl.'s Am. Compl. at 7.) After reviewing the plaintiffs' complaint, and in view of the fact that they do not provide the Court with any specific elements or theories of their common-law claims that would require a different analysis from that used by the Court in ruling on the plaintiffs' federal-law claims in sections III.A. and B.,[14] the Court concludes

species of counterfeiting, found that the defendant knowingly and with deliberate intent appropriated the design patent of the plaintiff and with guilty intent indicated to the public that his product was a patented article. The facts in *Krieger* clearly established that the defendant acted egregiously and deliberately in infringing on the plaintiff's design patent for a cap that resembled a rabbit's head and face.

**11.** Even assuming that *Krieger* was controlling, the Court concludes that such a presumption has been overcome by the evidence presented by the defendants.

**12.** "Unfair competition under Texas law 'is the umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters.' " *Taylor Publ'g Co. v. Jostens, Inc.*, 216 F.3d 465,

486 (5th Cir.2000) (quoting *Am. Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3, 14 (5th Cir.1974)). "The tort requires that the plaintiff show an illegal act by the defendant which interfered with the plaintiff's ability to conduct its business." *Id.*

**13.** Palming off (also known as passing off) has been described as "essentially false representation of origin." *Curtis v. Benson*, 959 F.Supp. 348, 355 n. 14 (E.D.La.1997) The plaintiffs' false-representation or destination-of-origin claim was dismissed by the Court in a prior order.

**14.** In an answer to an interrogatory to identify and explain all bases and supporting facts for the plaintiffs' allegations that the use of the word "patented" in the defendant's promotional literature constitutes common-law unfair competition, the plaintiffs referred the defendants to their previous answers dealing

that, regardless of whether these claims are preempted by federal law, the defendant is entitled to summary judgment for the same reasons discussed above.

## IV. CONCLUSION

Therefore, it is ORDERED that the plaintiffs' Motion for Partial Summary Judgment [doc. # 65–1] is DENIED and the defendant's Cross–Motion for Summary Judgment [doc. # 51–1] is GRANTED.

## FINAL JUDGMENT

Pursuant to the order issued this same day, and Federal Rule of Civil Procedure 58.

It is hereby ORDERED, ADJUDGED, and DECREED that defendant ETS, Inc. ("ETS") is hereby entitled to judgment as a matter of law that plaintiffs Laughlin Products, Inc. and Mist–On Systems, Inc. take nothing on their claims against ETS. It is further ORDERED, ADJUDGED, and DECREED that such claims be and are hereby DISMISSED WITH PREJUDICE. All costs under 28 U.S.C. § 1920 shall be taxed against the plaintiffs.

with false advertising and false patent marking. (Defs.' App. to Mot. at 63.)

Furthermore, in response to the defendant's motion for summary judgment on this issue, the plaintiffs state:

Defendant argues that Plaintiffs' unfair competition claim is preempted by the Lanham Act. While it is true that the Lanham Act can preempt unfair competition claims when both claims are based solely, for example, on a theory of likelihood of confusion, this is not such a case. Unfair competition is not a theory that is easily defined by certain elements, as it is fundamentally a question of the amorphous concept of fairness. While Plaintiff[s] certainly believe that Defendant's false advertising is a basis for an unfair competition claim, ... Plaintiffs also believe that Defendant's action would be considered to be unfair competition even if the Court did not find the elements of false advertising to be met. For this reason alone, the Court should not summarily dismiss Plaintiffs' unfair competition claim.
(Pls.' Resp. at 22.)