SEL–O–RAK CORPORATION, a Florida Corporation, Plaintiff,

v.

The HENRY HANGER & DISPLAY FIXTURE CORPORATION OF AMERICA, a New York corporation, and The Henry Hanger and Display Fixture Corporation of Florida, a Florida corporation, Defendants.

Civ. No. 4843–M.

United States District Court
S. D. Florida,
Miami Division.

Feb. 26, 1958.

Leonard Michaelson, Washington, D. C., Karl W. Flocks, Washington, D. C., Jack A. Abbott, Miami Beach, Fla., for plaintiff.

Milton Mokotoff, New York City, Martin Yelen, Miami, Fla., for defendants.

LIEB, District Judge.

This cause having come on to be heard on objections to the report of the Special Master, J. Edward Worton, appointed herein by order of this Court, dated the 19th day of November, 1956, and the Court having heard arguments of counsel and the briefs of counsel having been fully considered, together with the Master's report as amended and the evidence taken before the Master, the Court now makes the following findings of fact and conclusions of law, based upon the evidence, the Master's report as amended, and the objections raised thereto. Since these findings and conclusions supersede said Master's report and are made after due consideration of the objections thereto, said objections are rendered moot hereby.

Findings of Fact

1. Plaintiff, Sel-O-Rak Corporation, is a corporation organized under the laws of, and doing business in, the State of Florida and is engaged in the principal business of manufacturing a circular garment rack, on which there has been issued a valid design patent No. D–168,143, dated November 11, 1952, application filed July 23, 1952.

2. The plaintiff corporation is the assignee of design patent No. D–168,143, from the original patentee, Maurice Cohen.

3. The defendant corporation, The Henry Hanger and Display Fixture Corporation of America, is a New York corporation, said corporation being engaged primarily in the sale and distribution of garment display racks and fixtures of any and all descriptions. This defendant's objection to the Court's jurisdiction was overruled by order dated the 11th day of January, 1954, and it has since defended on the merits.

4. The defendant corporation, The Henry Hanger and Display Fixture Corporation of Florida, a Florida corporation, was engaged in the City of Miami, Florida, in the sale and distribution of garment display fixtures. It is now, to all intents and purposes, a moribund, if not actually defunct corporation.

5. This is an action brought by Sel-O-Rak Corporation, setting out in one cause of action a claim for damages for infringement of design patent No. D–168,143, and for unfair competition against The Henry Hanger and Display Fixture Corporation of America and against The Henry Hanger and Display Fixture Corporation of Florida.

6. The Henry Hanger and Display Fixture Corporation of America, a New York corporation; The Henry Hanger and Display Fixture Corporation of Florida, a Florida corporation; The Henry Hanger and Display Fixture Corporation of Chicago (not a defendant herein), an Illinois corporation; and The Henry Hanger and Display Fixture Corporation of California (not a defendant

herein), a California corporation, are interlocking corporations. Henry Spitz, Birdie Spitz, and Bernard Spitz are officers and directors of the New York corporation; Henry Spitz, Arthur Spitz, Bernard Spitz and Herbert Spitz are officers and directors of the Chicago corporation; Henry Spitz, Bernard Spitz and Arthur Spitz are officers and directors of the Florida corporation; Henry Spitz, Bernard Spitz and Herbert Spitz are officers and directors of the California corporation.

7. Wire Specialties, Inc., is a corporation organized under the laws of the State of New York, with place of business located at Merrimac Street, Lawrence, Massachusetts; Henry Spitz is its president and it is interlocked with and owned by The Henry Hanger Corporation of New York, or the officers and directors of the defendant corporations. Wire Specialties, Inc., is engaged in the manufacture of certain wire products which include the arms or hangers used in the garment display racks in question.

8. World Display Manufacturing Corporation is a New York corporation, designated by The Henry Hanger and Display Fixture Corporation of America to manufacture for the latter wooden garment display racks. World Display manufactured for The Henry Hanger and Display Fixture Corporation of America garment display racks for which the latter assumed the liability for infringement.

9. Artistic Wrought Iron is a concern designated by The Henry Hanger and Display Fixture Corporation of America to manufacture for it, garment display racks made of wrought iron.

10. The patent in suit covers a design for a garment display rack. It consists of two drums of wood (or other material), one superimposed on the other in such a way that the upper drum revolves; attached to the upper drum are trouser hangers which remain rigid and extended for the display of merchandise; attached to the lower drum or cylinder of smaller diameter than the upper, in proper proportion to the size of the entire article, are three verticle fins which, in the shape of a boomerang with convex side out, extend below the lower drum and form legs in the nature of a tripod to hold the rack. The validity of the patent has been unheld by the Court of Appeals for this Circuit in Sel-O-Rak Corp. v. Henry Hanger & Display Fix. Corp., 232 F.2d 176.

11. An officer of defendant corporations first obtained some of plaintiff's racks for resale, and photographs thereof for advertising purposes, at least as early as summer, 1952.

12. Early in November, 1952, while still ordering display racks from plaintiff, The Henry Hanger Company of America sent to World Display Corporation one of plaintiff's racks, with instructions to copy it. The copy was made by World Display and delivered on November 21, 1952, ten days after the patent issued.

13. The Defendant Corporation, The Henry Hanger and Display Fixture Corporation of America, used representations of a rack constructed according to the plaintiff's patented design to advertise and sell to the trade generally, its own racks copied from the same design, said practice continuing through at least the 3rd day of September, 1954. Defendant's advertising brochure contained a representation of a rack constructed according to plaintiff's patented design, which was designated as a rack manufactured by the defendant, The Henry Hanger and Display Fixture Corporation of America. It further appears from said brochure that the defendant cautioned the trade in general to "beware of inferior imitations."

14. On February 9, 1953, formal notice of infringement was given to The Henry Hanger and Display Fixture Corporation of Florida; no patent marking appears on the articles manufactured by plaintiff.

15. The so-called oral stipulation, entered into before Master Fleming, on May 14, 1954, is at best ambiguous. There appear, at page 191 of the tran-

script of the record before Master Fleming, the following proceedings:

"The Master: Let the record show that pursuant to the questioning this morning the Defendant has produced before the Special Master a new type of slack rack which is here for inspection by the parties, counsel and the Special Master but since this new slack rack is not involved in this law suit by any of the pleadings as now framed it is my view that the new slack rack doesn't enter into this litigation.

"Is that correct?

"Mr. Mokotoff (for Defendant): Yes. So stipulated.

"The Master: I kind of think that is right.

"Mr. Mokotoff: So stipulated. Yes I think so. Is that right, Mr. Michaelson?

"Mr. Michaelson (for Plaintiff): We will stipulate to that."

It is defendants' contention in their brief that "since 'the pleadings as now framed' include reference to 'colorable imitation', it would seem too clear for any serious argument that the parties have duly stipulated PX3–A is no 'colorable imitation' and, therefore, no infringement; a fortiori it was stipulated all the other racks of Defendants, except PX7, did not infringe." Plaintiff contends in its brief that "The parties did not (emphasis in original) stipulate before Master Fleming that any rack was not an infringement and such was never their intention. The wording of the stipulation specifically states that the pleadings before Master Fleming did not yet (emphasis in original) include the new rack."

The stipulation was not relied upon or called to this Court's attention on hearing on the order of reference. This order, directing Master Worton to consider all phases of the case, including infringement by colorable imitation was never directly attacked. The defendants attempted, belatedly before Master Wor-

ton, to raise the stipulation but continued to and did defend fully on the merits.

16. Defendants have built up a profitable business in the manufacture and sale of racks which follow plaintiff's patented design with but minor differences of detail observable by experts and in side by side comparison, but not sufficient to prevent confusion among ordinary purchasers of racks of this sort. In other words the ordinary purchaser of revolving racks, who was acquainted with the patented design would, upon viewing any of defendants' racks, including the wrought iron rack, PX–13A, assume that he was viewing an identical or slightly modified version of the patented design.

17. The plaintiff's witness, Mr. William George, in November of 1953, was actually misled into buying from defendants at their Biscayne Boulevard Store, in Miami, Florida, a rack which was a colorable imitation of the patented design, thinking it was a rack of the plaintiff.

18. After the defendants made colorable modifications to their copy of plaintiff's rack, the defendants sold the modified copies interchangeably with defendants' exact copy. Which imitation rack was received by a customer of defendants depended upon which imitation was then in stock. Defendants made no distinction in their records between the various models, each of which is either a colorable imitation or an exact copy of plaintiff's patented rack.

19. All of the racks which were before the Court in this suit, (being exhibit Nos. PX7 [exact copy], PX3A, PX6A, PX12A, PX21A, PX25A, and PX13A) and which were manufactured by and for the defendants and sold by them, infringe plaintiff's patent.

20. The defendants sold portions of racks (tops) like the upper portion of plaintiff's patented design, without the base. These tops constituted a material part of the patented design and were especially made and adapted, and were known by the defendants to be so adapt-

ed, for use in an infringement of such patent, and were not a staple article or commodity of commerce suitable for substantial non-infringing use.

21. The defendant corporations and their aforesaid interlocking corporate affiliates sold 710 infringing wooden pants racks, between the time of the giving of the notice of infringement and the time of this accounting, for a total sales volume of $96,596.39.

This finding is based upon defendants' admission of 714 sales of racks which infringe, but is reduced by the four racks which plaintiff admits were sold before the notice of infringement was given. Defendants, although admitting that 714 racks were sold, have made no attempt to show which of the racks were sold before the notice of infringement, and it is impossible to arrive at any definite conclusion from the invoices. However, plaintiff has admitted that at least four racks were sold prior to the notice of infringement.

22. The defendant corporations and their aforesaid interlocking corporate affiliates sold 90 infringing wrought iron clothing racks, between the time of the giving of the notice of infringement and the time of the accounting, for a total sales volume of $6,063.55.

This finding is based upon Master Worton's finding which is accepted by this Court.

23. The defendant corporations and their aforesaid interlocking corporate affiliates sold 59 infringing wooden pants rack tops, between the time of the giving of the notice of infringement and the time of the accounting, for a total sales volume of $7,258.

This finding is based upon Master Worton's finding, which is accepted by this Court.

24. The defendant corporations and their aforesaid interlocking corporate affiliates sold 126 infringing wooden skirt racks, between the time of the giving of notice of infringement and the time of the accounting, for a total sales volume of $17,726.87.

This finding is based upon Master Worton's finding, which is accepted by this Court.

25. The defendant corporations and their aforesaid interlocking corporate affiliates sold 7 infringing wooden skirt rack tops, between the time of the giving of the notice of infringement and the time of the accounting, for a total sales volume of $904.50.

This finding is based upon Master Worton's finding, which is accepted by this Court.

26. Defendants' allowed cost of manufacture of wooden pants racks is $80.35 each.

This finding is based upon Master Worton's finding, which is accepted after a consideration of the objections raised thereto.

27. Defendants' allowed cost of manufacture of wrought iron clothing racks is $40.46 each.

This finding is based upon Master Worton's finding, which is accepted after a consideration of the objections raised thereto.

28. Defendants' allowed cost of manufacture of wooden pants rack tops is $51.17 each.

This finding is based upon Master Worton's finding, which is accepted after a consideration of the objections raised thereto.

29. Defendants' allowed cost of manufacture of skirt racks is $80.35 each.

This finding is based upon Master Worton's finding, which is accepted after a consideration of the objections raised thereto.

30. Defendants' allowed cost of manufacture of skirt rack tops is $51.17 each.

This finding is based upon Master Worton's finding, which is accepted after a consideration of the objections raised thereto.

31. The total cost to the defendants for 710 wooden pants racks sold was $57,048.50. Sales by defendants for 710 wooden pants racks amounted to $96,596.-

39. The difference, $39,547.89 represents defendants' profits on these sales.

32. The total cost to defendants for 90 wrought iron clothing racks sold was $3,641.40. Sales by defendants for wrought iron clothing racks amounted to $6,063.55. The difference $2,422.15, represents defendants' profits on these sales.

33. The total cost to the defendants for 59 wooden pants rack tops sold was $3,019.03. Sales by defendants for wooden pants rack tops amounted to $7,258. The difference, $4,238.97 represents defendants' profits on these sales.

34. The total cost to the defendants for 126 wooden skirt racks sold was $10,124.10. Sales by defendants for wooden skirt racks amounted to $17,-726.87. The difference, $7,602.77 represents defendants' profits on these sales.

35. The total cost to the defendants for 7 wooden skirt rack tops sold was $358.19. Sales by defendants for wooden skirt rack tops amounted to $904.50. The difference, $546.31 represents defendants' profits on these sales.

36. Defendants are a nationwide chain, selling garment display fixtures of all types. At the time of the infringement there were other companies selling display fixtures. By testimony of plaintiff's own witness there were other companies selling racks which were alleged to be infringing models of plaintiff's racks. Plaintiff has failed to show that if defendant had not made the sales of the infringing models, plaintiff would have made such sales; in the light of the testimony as to defendants' nationwide clientele, and the presence of other competitors in the market, it would be rank speculation to find that plaintiff would have sold to all these customers. There is no basis in the testimony to show to how many of these customers plaintiff might have been able to sell.

37. Plaintiff has offered testimony to show that it reduced its prices at about the time the infringement began. However, there is also testimony that plaintiff's salesmen and jobbers were competing with each other and that price cutting was going on. There were, as noted above, other competitors in the market. Plaintiff has failed to show that any general reduction in price was directly attributable to the infringement. Furthermore plaintiff has completely failed to show that on any particular sale the price was reduced by reason of the presence of the infringing models in the market.

Conclusions of Law

1. The Court has jurisdiction of the parties and of the subject matter of this action under the Patent Laws of the United States.

2. The plaintiff, Sel-O-Rak Corporation, as assignee of design patent No. D-168,143, is the proper party to maintain this suit.

3. Even if the so called "oral stipulation" before Master Fleming could be construed to have the limiting effect which defendant now urges, a point which I do not find necessary to decide for this decision, the stipulation must be held to have been abandoned by the conduct of the parties themselves, and the cause is decided on the testimony as submitted.

4. The defendants, and those in privity with defendants, have directly infringed the plaintiff's patent by copying plaintiff's design and by manufacturing, selling and offering for sale exact copies and colorable imitations of plaintiff's patented design.

5. Defendant has contributorily infringed in regard to the skirt rack tops and the pants rack tops.

6. Plaintiff has failed to make out a cause of action for unfair competition, distinct from patent infringement.

Plaintiff is being compensated under the patent laws for the infringement of its patent. Whatever harm plaintiff has shown, arises directly from the infringement and the acts in furtherance thereof. In the absence of patent, copying of the design does not *per se* constitute unfair competition. The first Master,

Fleming, concluded as a matter of law that there was no unfair competition. No objection was raised to this conclusion. Judge Holland adopted Master Fleming's report with certain modifications, not here pertinent, and dismissed the one-count complaint. The Court of Appeals, 5 Cir., 232 F.2d 176, in reversing this dismissal on the ground that the patent was valid and infringed, made no mention of the claim for unfair competition. Although this Court's order to Master Worton, the second Master, referred the question of unfair competition as well as infringement and accounting, Master Worton made no finding on unfair competition and no objection was raised to this failure to find. Neither in the briefs, nor in the oral argument before me, was unfair competition directly urged, although it was alluded to for the purpose of bolstering the claim for treble damages. I am persuaded on the basis of the pleadings and the subsequent course of the litigation that there is not now before me an independent claim predicated on unfair competition. In any event it is my conclusion that there is not sufficient evidence specifically directed to such a claim to warrant any finding or conclusion other than that set out above.

■ 7. Plaintiff is entitled to an injunction against further infringement and an accounting of damages, the accounting period to start on February 9, 1953, the date of the notice of infringement.

In view of the fact that an accounting was necessary as to the identical copy admitted to infringe, it was deemed expedient to have a complete accounting, at the same time, of all colorable imitations, in the event they were found to constitute infringement. This accounting has been had before the Master and is the basis of the findings herein.

8. The plaintiff shall recover from defendants the following sums:

| | |
|---|---:|
| Defendants' profits from wooden pants racks | $39,547.89 |
| Defendants' profits from iron racks | 2,422.15 |
| Defendants' profits from pants rack tops | 4,238.97 |
| Defendants' profits from skirt racks | 7,602.77 |
| Defendants' profits from skirt rack tops | 546.31 |
| amounting to a Total of | $54,358.09 |

plus interest from the date hereof, and costs.

───────◆───────

■ This sum represents the defendants' profit on all infringing structures. 35 U.S.C. § 289 makes the total profits of the infringer one of the measures of damages in design patent cases. If plaintiff had been able to show further general damages under § 284, 35 U.S.C., such as forced price reduction, lost profits in excess of those made by defendant, or loss of good will, it would be entitled to compensation for these other general damages as well, but in view of the failure of proof on these items, infringer's profits are taken as the measure of general damages. Since these damages are in excess of a reasonable royalty, plaintiff has been fully compensated under § 284. Plaintiff argues, and Master Worton recommended, that plaintiff is entitled to a reasonable royalty in addition to infringer's profits. The inconsistency of such an award seems apparent. A "reasonable royalty" is a legal fiction resorted to upon a failure of proof as to an established royalty or other general damages, and is made the minimum limit of recovery. However, this legal fiction envisions that the royalty agreement is operative *ab initio*.[1]

1. Enterprise Mfg. Co. v. Shakespeare, 6 Cir., 1944, 141 F.2d 916, 919; cf. also Krieger v. Colby, S.D.Cal.1952, 106 F. Supp. 124, *130* and Wedge v. Waynesboro Nurseries, Inc., D.C.W.Va.1940, 31 F. Supp. 638, *642*.

Certainly if defendant is required to pay a royalty for the right to make, use, and sell, he is not then to be deprived of his profits earned from such making, using, and selling. Conversely, if the infringer is to be deprived of its profits for unlawfully making, using, and selling, it is not to be charged a royalty for such making, using, and selling, which has availed it nothing. The concepts of "royalty" and "infringer's profits" are contradictory. Either there is a royalty agreement—consensual or legally imposed—and defendant is entitled to his profits, or there is no royalty agreement and defendant, as an infringer, must turn over its profits. All plaintiff is entitled to is a compensatory award, not a vindictive one. While it may be true that plaintiff would have an election between infringer's profits or reasonable royalty, if infringer's profits were less than such royalty, here, even assuming that the 20% of established selling price adopted by Master Worton is reasonable, the infringer's profits are greater, and plaintiff is being compensated in a sum not "less than a reasonable royalty" as required by the statute.

Judge Yankwich, construing the effect of the recent amendments to the Patent Laws, has expressed much the same idea in the following excerpt from Laskowitz v. Marie Designers, Inc.: [2]

"* * * Whatever may have been the practice prior to the recent statutory amendments, the general damages *now* (emphasis in original) recoverable are the detriment suffered by the plaintiffs through the infringement. The profits of the infringer may be the measure, when no other is adequate. Whichever determinative method is used, the aim is to 'compensate (the plaintiff) for the infringement', as the statute declares specifically. And when the profits *or* (emphasis supplied) a reasonable royalty are chosen as a basis, there is no room for the award of other damages. In ascertaining

damages, the object has always been to approximate, as nearly as possible, the *actual loss* (emphasis in original) suffered by the patentee."

9. Plaintiff is not entitled to recover attorney's fees nor treble damages.

In regard to the infringement itself it cannot be said that defendants were wilful and wanton. The patent had probably not been issued when defendants directed World Wide to make the copy, and admittedly had not been adjudicated before this suit. Mr. Fleming, the first Master, and also Judge Holland of this Court, found the patent to be invalid, so that the validity of the patent was doubtful, at best, until passed upon by the Court of Appeals of this Circuit. Defendants were legally entitled to challenge the validity when sued for infringement, and I cannot say that their contention that the patent was invalid and that, therefore, their copy could not infringe, was made in bad faith. Long before the patent was held to be valid, defendant had changed its model in an attempt to avoid infringing. These modified models have only now been found to infringe, and that only after protracted litigation and careful consideration by the Master and Court. While some of the alleged business methods of defendants are reprehensible at best, so also is the recent use the plaintiff has made, in its advertising, of Master Worton's report. For all of these reasons, in the exercise of the discretion vested in me by the statute, I cannot conscientiously award plaintiff increased damages. The case was vigorously prosecuted, and strenuously defended, but this is true of any case in which the question of validity and infringement is a close one. It does not seen to me that this is such an exceptional case as to warrant the award of attorney's fees.

10. Plaintiff shall recover its costs from defendants.

11. Defendants and those in privity with them shall be permanently enjoined from:

2. D.C.S.D.Cal.1954, 119 F.Supp. 541, *554.*

A. Directly or indirectly manufacturing, using or selling, or exposing for sale or advertising for sale racks of the design embodied in Patent No. D-168,-143, or colorable imitations thereof.

12. Master Worton is awarded a fee in the amount of $3,000; payment to be made half by plaintiff and half by defendants.

13. A final decree shall be entered herein in accordance with these findings and conclusions.