**HENRY HANGER & DISPLAY FIXTURE CORPORATION OF AMERICA et al., Appellants,**

v.

**SEL–O–RAK CORPORATION, Appellee.**

**SEL–O–RAK CORPORATION, Appellee,**

v.

**HENRY HANGER & DISPLAY FIXTURE CORPORATION OF AMERICA et al., Appellants.**

No. 17477.

United States Court of Appeals
Fifth Circuit.

Sept. 18, 1959.

Milton M. Mokotoff, Murray A. Gordon, New York City, Martin Yelen, Miami, Fla., for appellants.

Karl W. Flocks, Leonard Michaelson, Washington, D. C., Jack A. Abbott, Miami Beach, Fla., for appellee.

Before RIVES, Chief Judge, and CAMERON and JONES, Circuit Judges.

JONES, Circuit Judge.

Maurice Cohen procured a design patent on a garment rack which he assigned to Sel-O-Rak Corporation, here called the plaintiff. Suit was brought against The Henry Hanger and Display Fixture Corporation of America, and its affiliate, The Henry Hanger and Display Fixture Corporation of Florida, here called the defendants. Damages for patent infringement and unfair competition were sought. Reference was made to a master and on his report it was determined that the patent was invalid and the complaint was dismissed. On appeal this Court reversed, sustained the validity of the patent, and remanded the cause for further proceedings. Sel-O-Rak Corporation v. Henry Hanger and Display Fixture Corporation, 5 Cir., 1956, 232 F.2d 176, certiorari denied 352 U.S. 870, 77 S.Ct. 95, 1 L.Ed.2d 76. Another reference was made to a master and, following his report, the district court made findings of fact and conclusions of law, there being thirty-seven findings of fact and thirteen conclusions of law. Sel-O-Rak Corporation v. Henry Hanger & Display Fixture Corporation, D.C.S.D.Fla. 1958, 159 F.Supp. 769, 772. A decree was entered pursuant to the findings and conclusions. Damages for infringement of the patent were awarded to the plaintiff and further infringement by the defendants was enjoined. The defendants appealed asserting that none of their garment racks infringed except the Chinese copy which they had ceased to make or sell, and that the Court had computed damages at a higher figure than was proper under the evidence. The plaintiff appealed and contends that the court should have found the infringement to be willful and in bad faith that the damages for infringement awarded were inadequate, that error was committed in not finding the defendants guilty of unfair competition with an appropriate award of damages, that attorneys' fees should have been awarded to the plaintiff, and that the court should not have assessed against the plaintiff one-half of the fee of the master.

In the initial proceedings before Edward E. Fleming as Special Master, one of the witnesses was Henry Spitz, president of the defendant corporations. During his examination he stated that the defendants were not then manufacturing a rack resembling the patented rack, and the rack then being manufactured was changed, improved and better. Having no picture, the witness attempted to draw one and to show by the drawing and oral testimony where the rack then being manufactured differed from the patented article. There being a doubt as to whether the drawing was admissible, the witness volunteered to have the rack photographed. There was an adjournment for lunch. The afternoon session began with this statement by the Special Master:

"Let the record show that pursuant to the questioning this morning the defendant has produced before the Special Master a new type of slack rack which is here for inspection by the parties, counsel and the Special Master but since this new slack rack is not involved in this law suit by any of the pleadings as now framed it is my view that

the new slack rack doesn't enter into this litigation. Is that correct?"

Counsel for both plaintiff and defendants stated that it was so stipulated. The so-called "new slack rack" was not then offered in evidence nor was any photograph of it tendered.

In the hearings before Special Master Worton, appointed after the former appeal, the Special Master first appointed, Edward E. Fleming, having died, the general manager of one of the defendants testified that the "new slack rack" which had been produced before Master Fleming was the same rack as was subsequently in evidence as Plaintiff's Exhibit (PX) 3A. It is the defendants' contention that "Since 'the pleadings as now framed' include reference to 'colorable imitation', it would seem too clear for any serious argument that the parties have duly stipulated PX 3A is no 'colorable imitation' and, therefore, no infringement; a fortiori it was stipulated all the other racks of defendants, except PX 7 [the Chinese copy] did not infringe."

The plaintiff challenges the statement that the so-called "new rack" is the same as the one designated as PX 3A, pointing out that the witness who attempted to establish the identity was not present when the "new rack" was before Master Fleming and could have had no first-hand knowledge of the fact. The district court, in its findings and conclusions, says:

> "The so-called oral stipulation, entered into before Master Fleming, on May 14, 1954, is at best ambiguous. * * * The stipulation was not relied upon or called to this Court's attention on hearing on the order of reference. This order, directing Master Worton to consider all phases of the case, including infringement by colorable imitation was never directly attacked. The defendants attempted, belatedly before Master Worton, to raise the stipulation but continued to and did defend fully on the merits.

> * * * * * *

> "Even if the so called 'oral stipulation' before Master Fleming could be construed to have the limiting effect which defendant now urges, a point which I do not find necessary to decide for this decision, the stipulation must be held to have been abandoned by the conduct of the parties themselves, and the cause is decided on the testimony as submitted."

The stipulation is ambiguous in that it is doubtful whether the parties intended to agree that the "new slack rack" did not infringe plaintiff's patent, or merely that the pleadings as then framed did not raise the issue of infringement as to the particular rack. The stipulation, in the form in which it was made and at the time it was made was not only ambiguous but was incomplete. The subject matter of the stipulation was not described otherwise than as a rack "which is here for inspection." Ambiguities in stipulations, as in the case of other agreements, may be removed and the intention of the parties may be determined by judicial construction, but the courts cannot, under the guise of construction, insert into an agreement an essential element such as the subject matter to which the agreement shall apply. Such a defect cannot be remedied by any conduct of the parties which falls short of an agreement of itself, or an estoppel; nor can such a deficiency be supplied by one party without the assent of the other, whether attempted by testimony or otherwise.

The defendants voice the opinion that if Master Fleming had lived the plaintiff would not have questioned the stipulation and would have accepted the defendants' views as to its meaning. We need not indulge in any speculation on this theme. An examination of the record of the first trial discloses that the issue paramount was the validity of the patent. Infringement played a minor role. On the remand of the cause to the district court an order was entered appointing J. Edward Worton as Special Master and directing him, among

other things, to determine the extent of the defendants' infringement and take an accounting of all garment racks made and sold by the defendants which infringe on the plaintiff's patents. Pursuant to this authority the Master entered an order reciting the necessity of viewing and classifying all of the defendants' circular, portable or movable garment racks manufactured subsequent to the issuance of plaintiff's patent, and requiring the production of photographs of each model. There was nothing then said or done to indicate that the defendants relied upon the stipulation to exclude all of the racks made by them except the Chinese copy, from the charge of infringement. At the opening of the hearing there was a pre-trial hearing and discussion between Master and counsel. The Master stated that photographs of all of defendants' racks should be brought in so that he could determine "those which look like Cohen's patent and whether it is a colorable imitation". One of defendants' counsel stated his understanding that "the photographs will be, first, for determination of which are or are not colorable imitations or exact copies, and pick up from that point." It was agreed that the defendants would produce photographs of all garment racks manufactured or sold by them since the issuance of the patent. Then other counsel for the defendants objected to any consideration of colorable imitations on the ground that, at the original trial, the only rack which the plaintiff accused of infringement was the Chinese copy and that by election the plaintiff had precluded itself from asserting that any other racks infringed. The stipulation was not mentioned. We think that, even if the stipulation had the meaning which the defendants would read into it, their right to assert it was waived.

■■■■ The defendants urge that there was error in the findings of the master and the court that their revolving garment racks infringed upon the plaintiff's patent. The test of infringement of a design patent has been stated in the often quoted opinion of the Supreme Court in Gorham Manufacturing Co. v. White, 14 Wall. 511, 81 U.S. 511, 20 L.Ed. 731. There it was said:

"We hold, therefore, that if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the others." 81 U.S. 511, 528.

Also applicable here is this statement of the test to be applied:

"Design, in the view of the patent law, is that characteristic of a physical substance which, by means of lines, images, configuration, and the like, taken as a whole, makes an impression, through the eye upon the mind of the observer. The essence of a design resides, not in the elements individually, nor in their method of arrangement, but in their tout ensemble—in that indefinable whole that awakens some sensation in the observer's mind. Impressions thus imparted may be complex or simple; in one a mingled impression of gracefulness and strength, in another the impression of strength alone. But whatever the impression, there is attached in the mind of the observer, to the object observed, a sense of uniqueness and character." Pelouze Scale & Mfg. Co. v. American Cutlery Co., 7 Cir., 1900, 102 F. 916, 918.

As the Gorham opinion notes, it is through the eyes of the ordinary observer rather than the expert that the designs are to be viewed in determining their sameness of appearance or absence thereof. And it is the overall appearances that will control and not the minutia of differences. 1 Walker on Patents, Deller's Ed. 444 § 141; Harris & Schafer v. Curtiss Aerocar Co., 5 Cir., 1934, 69 F.2d 264, 265.

The questions of infringement here presented are questions of fact. In such cases Rule 52, Fed.Rules Civ.Proc. 28 U.S.C.A. applies. Fairchild v. Poe, 5 Cir., 1958, 259 F.2d 329; Fritz W. Glitsch & Sons, Inc. v. Wyatt Metal & Boiler Works, 5 Cir., 1955, 224 F.2d 331; Otis Pressure Control v. Guiberson Corporation, 5 Cir., 1940, 108 F.2d 930. We need not review the testimony of the witnesses who undertook to give evidence upon the issue of substantial identity of the rack of the patented design and those accused of infringing. Nor is it necessary to discuss the points of similarity and difference between the plaintiff's rack and those of the defendants, although we shall briefly comment with respect to the defendants' rack identified as PX 13A. The Special Master, in his report and the court in its findings referred to the testimony of William George. He testified that he did not notice any difference between the patented rack and an accused rack until it was called to his attention. The district court has noted that this witness, "in November of 1953, was actually misled into buying from defendants at their Biscayne Boulevard Store in Miami, Florida, a rack which was a colorable imitation of the patented design, thinking it was a rack of the plaintiff." 159 F.Supp. 769, 773. There was the testimony of the witness Henry Coleman, a pants salesman who was familiar with the racks of plaintiff. On seeing one of the racks of the defendants he stated that it appeared to be a rack of the plaintiff.

The defendants placed great stress on the differences between the rack which was patented and the rack of the defendants which was designated PX 13A. This rack was made of wrought iron while the plaintiff's patented rack and the other racks of defendants were of wood. PX 13A had a square top where the tops of the others were round. But do these and other differences change the effect of the design and the peculiar and distinctive appearance? These are the essentials of a design patent and are entitled to the patent law's protection. The district court found:

"Defendants have built up a profitable business in the manufacture and sale of racks which follow plaintiff's patented design with but minor differences of detail observable by experts and in side by side comparison, but not sufficient to prevent confusion among ordinary purchasers of racks of this sort. In other words the ordinary purchaser of revolving racks, who was acquainted with the patented design would, upon viewing any of defendants' racks, including the wrought iron rack, PX–13A, assume that he was viewing an identical or slightly modified version of the patented design." 159 F.Supp. 769, 773.

The racks were before the master and the district court. They could compare and contrast the racks of each of the parties. Edison Electric Appliance Co. v. Fitzgerald Mfg. Co., 2 Cir., 1929, 32 F.2d 705. We think the master and the district court did not err in finding infringement by all of the defendants' accused racks.

The district court made a finding that:

"The defendants sold portions of racks (tops) like the upper portions of plaintiff's patented design, without the base. These tops constituted a material part of the patented design and were especially made and adapted, and were known by the defendants to be so adapted, for use in an infringement of such patent, and were not a staple article or commodity of commerce suitable for substantial non-infringing use." 159 F.Supp. 769, 773–774.

This finding, the defendants assert, was error and as the basis for the assertion it is claimed that there is inadequate proof to show that the tops were a material part of the patented design, especially adapted, and known by the defendants to be so adapted, for use in an

infringement. The court's finding tracks the statute. 35 U.S.C.A. § 271(c). The upper portions of the patented design and the testimony of the witnesses who testified as to their uses were considered by the master and the court. The tops could have utility only when used with a matching base and it is fairly inferable that such use would amount to infringement. Southern States Equipment Corp. v. USCO Power Equipment Corp., 5 Cir., 1953, 209 F.2d 111. See also Baldwin Rubber Co. v. Paine & Williams Co., 6 Cir., 1938, 99 F.2d 1; Florence-Mayo Nuway Co. v. Hardy, 4 Cir., 1948, 168 F.2d 778; 3 Walker on Patents, Deller's Ed. 1764 et seq. § 507; 66 Harv.L.Rev. 909 et seq.

■■■■ The defendants raise several questions with respect to the amount of damages. 125 racks were shipped by one of the defendants to an affiliate, Henry Hanger of California. One of the specified errors is that credits of $6.25 per rack should be allowed the defendants for freight from New York to California. The defendants' witness Phillips, general manager of the parent company, was asked "What were the net sales of Henry Hanger of California?" With some equivocation he came up with a net figure of $17,132.74. Later he used this figure as representing sales to California f. o. b. New York. In their brief the defendants make reference to "the sale of 125 racks through Henry Hanger of California". The defendants suggest that the master and the district court evidently overlooked the freight charges. It is not necessary to make objections to the master's findings as permitted by Rule 53(e) (2), Fed.Rules Civ.Proc. 28 U.S.C.A.; 5 Moore's Federal Practice 2nd Ed. p. 2969, par. 53.11. None were made, and neither in the record nor the briefs is there any clear showing that the defendants were entitled to the credit claimed. It is not enough to prove that someone paid $6.25 freight charges on each rack shipped to California and that is as far as the proof goes. The findings, on this question, of the master and the district court are not clearly erroneous.

■■■■ Each rack used 100 wire hangers. The defendants paid $10.00 per hundred for hangers and included this amount in their cost figures. These hangers were procured from Wire Specialties, Inc., which is owned by the defendants or their officers and directors and which operates in the same premises as the defendant parent company. On the evidence before him a proper cost figure for the hangers was found by the master to be $3.68 per hundred. The courts should not countenance the reduction of damages for infringement by the diversion of a portion of the profits of the infringement to an entity controlled by the infringer or by those who control it. The defendants urge that any cost price paid by an infringer to a related corporation may be deducted if the payments are made pursuant to a bona fide arrangement which predates the infringing. We do not decide whethed this is a correct statement of principle. It is enough to say that there is no evidence of any such arrangement, and we will not charge the plaintiff with the failure to supply evidence of the negative of a proposition which is known only to the defendants and those related to them.

■■■■ Evidence was submitted before the master as to the selling price of the infringing racks. Evidence was submitted as to the costs of material and direct labor costs of the defendants in the manufacture of the infringing racks. These figures formed the basis for the computation of the defendants' profits. The defendants contended that in the cost computation an item of 32% of sales for overhead and 1.8% of sales for taxes should have been included. The master made no allowances for overhead and taxes for the reason, among others, that the claimed allowances were not properly proven. The district court accepted the master's findings as to costs and profits but did not discuss this phase of the case in its opinion. The defendants assert error in the omission of these allowances in the profit computations. For the purpose of establishing these al-

lowances the defendants' witness, Phillips, procured from the defendants' accountants a letter giving the information which he (Phillips) thought necessary. The accountants, so Phillips testified, got the figures shown in the letter "off the report," though no report was produced. The letter reads:

"Please be advised that for the year ended February 29, 1956, as per your Federal Income Tax Report, your total overhead expenses was 32% of your sales, the tax expense for the year amounted to 1.8% of your total sales. The total overhead expenses consisted of selling, shipping, general, administrative and depreciation. In other words the total cost of doing business amounted to 33.8% of your sales."

The evidence showed that the infringing sales by the defendants commenced in 1952 and continued through 1956. Whether the defendants' ratio of overhead and taxes to sales was the same in earlier years as in the fiscal year ending February 29, 1956, does not appear. Whether depreciation deducted in determining Federal income taxes had any reasonable relation to the cost of the infringing racks does not appear. Whether the "general" overhead included any of the expense of defending this suit, which might be questionable as an allowable cost item, does not appear. Whether the overhead included interest on money borrowed for purposes unrelated to the production of the infringing racks does not appear. These matters are factors which should be incorporated in the reckoning if general overhead is to be allowed as an element of cost in computing profits. The burden of establishing them rested upon the defendants. Horvath v. McCord Radiator & Mfg. Co., 6 Cir., 1938, 100 F.2d 326, certiorari denied 308 U.S. 581, 60 S.Ct. 101, 84 L.Ed. 486, rehearing denied 308 U.S. 636, 60 S.Ct. 171, 84 L.Ed. 529; Autographic Register Co. v. Sturgis Register Co., 6 Cir., 1940, 110 F.2d 883; 3 Walker on Patents, Deller's Ed., 2168 § 831. While apportionment of some overhead and general business costs between the infringing and the non-infringing operations of a business enterprise will usually be made, this should not be done unless it is shown that the particular overhead classifications are such that an apportionment is proper. It is not enough merely to say that the overall overhead for income tax purposes was a stated percentage of overall sales. The master's determination that the claim of the defendants to an allowance for overhead was not established was correct. We reach the same conclusion as to taxes without deciding the extent to which taxes of an infringer may be considered in measuring his profits. See Livesay Window Company v. Livesay Industries, Inc., 5 Cir., 1958, 251 F.2d 469.

 The master found that the plaintiff had not shown that it was entitled to damages by reason of a loss of profits which it would have made in the absence of sales by the defendants of the infringing racks. The master also found that the plaintiff had not established its contention that it had sustained losses resulting from forced price reductions which it made in order to meet the competition of the defendants in their selling of the infringing racks. These findings were sustained by the district court. The plaintiff asserts that these findings are error. These questions are questions of fact. The findings of the master and of the court are not erroneous. The comments of the district court in its published opinion require no emendation on our part. 159 F.Supp. 769, 775.

 It was found by the master that the plaintiff was entitled to recover, in addition to an amount equal to the defendants' profits from the sale of infringing racks, a royalty of 20% of the sales price. The district court excluded the amount of the royalties from the award of damages. We agree with the court's ruling and for the reasons given. 159 F.Supp. 769, 776, 777. If the statutory measure of compensatory damages is to be found in 35 U.S.C.A. § 289, a royalty in addition to profits should not

have been awarded since the profit was in excess of the minimum as fixed by that section. So also under 35 U.S.C.A. § 284, which applies to design patents as well as to others. Krieger v. Colby, D.C.S.D.Cal.1952, 106 F.Supp. 124. Where the infringer was a former licensee of the patent, royalty may be a factor related to profits and hence an element of damages sustained by the holder of the patent. Livesay Window Company v. Livesay Industries, Inc., supra. Profits of the infringer are evidence of the damages sustained by the holder of the patent and may be the measure of damages. Graham v. Jeoffroy Mfg. Co., Inc., 5 Cir., 1958, 253 F.2d 72, certiorari denied 358 U.S. 817, 79 S.Ct. 28, 3 L.Ed. 2d 59, rehearing denied 358 U.S. 890, 79 S.Ct. 117, 3 L.Ed.2d 118. Where, as here, the infringer's profits are taken as the measure of the plaintiff's loss, a royalty should not be included to increase the award of damages. Laskowitz v. Marie Designer, Inc., D.C.S.D.Cal.1954, 119 F.Supp. 541; Goodyear Tire & Rubber Co. v. Overman Cushion Tire Co., 6 Cir., 1937, 95 F.2d 978. We find no error in the district court's determination of compensatory damages.

 The plaintiff urges that the conduct of the defendants has been such as to require an award of damages for unfair competition, or for the allowance of treble damages, or both. The district court resolved these questions against the plaintiff who asserts error and seeks the aid of this Court in obtaining the relief to which it claims to be entitled. Where a patent is held valid and infringed a claim for damages from unfair competition arising from the infringement may be joined with the cause of action for infringement. Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148; General Motors Corporation v. Rubsam Corporation, 6 Cir., 1933, 65 F.2d 217, certiorari denied 290 U.S. 688, 54 S.Ct. 123, 78 L.Ed. 593. It was the district court's conclusion that there was no independent claim predicated on unfair competition, and that, in any event, there was not sufficient evidence directed to

such a claim to entitle the plaintiff to a recovery. The business practices of the defendants, in some of their activities in competing with the plaintiff would evoke no praise of the moralists. However, when the plaintiff points out the unethical acts of the defendants, it might be reminded of the ill grace with which the pot calls the kettle black. The two claims, the one for infringement and the other for unfair competition, may differ somewhat in the theory of legal liability. The acts of the defendants which the plaintiff says constituted unfair competition were acts of patent infringement or were so directly related to infringement as to constitute a part of it. Cf. 1 Callmann, Unfair Competition and Trade Marks 244 § 16.1. We think there was no evidence of any injury sustained by the plaintiff by reason of unfair competition from the defendants for which the plaintiff is not compensated by the court's judgment. The denial of a separate award for unfair competition is not erroneous.

 The district court was asked to award treble damages and attorneys' fees to the plaintiff. It determined that the infringement was not wilful and wanton and that there should be no recovery of increased damages or of attorneys' fees under the permissive provisions of the statute, 35 U.S.C.A. §§ 284–285, 159 F.Supp. 769, 777. In the absence of an abuse of the trial court's discretion its determination of these questions will not be reversed on appeal. Topliff v. Topliff, 145 U.S. 156, 12 S.Ct. 825, 36 L.Ed. 658; Graham v. Jeoffroy Mfg. Co., Inc., supra; E-I-M Company v. Philadelphia Gear Works, 5 Cir., 1955, 223 F.2d 36, certiorari denied 350 U.S. 933, 76 S.Ct. 304, 100 L.Ed. 815; Amusement Corporation of America v. Mattson, 5 Cir., 1943, 138 F.2d 693, certiorari denied 321 U.S. 782, 64 S.Ct. 639, 88 L. Ed. 1074. No abuse of discretion on the part of the district court appearing, its determination is affirmed. So also, and for like reasons, should the district court's apportionment of the master's fee equally between plaintiff and defend-

ants be affirmed. The trial court was vested with a discretion and no abuse of it is shown.

 When the defendants as appellants and the plaintiff as appellee and cross-appellant had each filed their designations of the portions of the record that they required to be printed, an order was entered by this Court that each of the parties should advance the cost of the printing of the portion of the record which they, respectively, had designated, subject to reassessment upon the determination of the appeal. We think the basis as fixed by the order is fair and reasonable and it is affirmed.

We have found no error. We think the district court, in the various issues presented to and decided by it, reached correct results and entered a proper judgment. That judgment is

Affirmed.