James P. MITCHELL, Secretary of Labor,
Plaintiff,

v.

ALL–STATES BUSINESS PRODUCTS
CORPORATION and Arthur Kunz-
weiler, Defendants.

No. C–19801.

United States District Court
E. D. New York.

Oct. 4, 1965.

See also, D.C., 232 F.Supp. 624.

John A. Hughes, Regional Atty., by Samuel Gorin, Atty., U. S. Dept. of Labor, New York City, for plaintiff.

Lipper, Shinn, Keeley & Dannenberg, by Aaron Lipper, New York City, for defendant Arthur Kunzweiler.

Benjamin H. Haskell, New York City, for defendant All-States Business Products Corp.

ZAVATT, Chief Judge.

An order of this court dated July 14, 1959, permanently enjoined the defendants herein, All-States Business Products Corporation (hereinafter "All-States") and Arthur Kunzweiler, the president of All-States from the date of incorporation to March 15, 1963 (hereinafter "Kunzweiler"), from violating the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201–219 (hereinafter the "Act"), in the following pertinent respects:

"(2) Defendants shall not, contrary to Section 7 of the Act, employ any of their employees, engaged in commerce or in the production of goods for commerce, as defined by the Act, for a work-week longer than forty (40) hours, unless the employee receives compensation for his employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he is employed.

\* \* \* \* \* \*

(4) Defendants shall not fail to make, keep and preserve adequate and accurate records of their employees, and of the wages, hours and other conditions and practices of employment maintained by them, as prescribed by the regulations of the Administrator of the Wage and Hour Division, United States Department of Labor, issued and from time to time amended, pursuant to Section 11(c) of the Act and found in Title 29, Chapter V, Code of Federal Regulations, Part 516."

Section 778.3(4) of said Regulations provides:

"(4) *Salaried employees-general.* If the employee is employed solely on a weekly salary basis, his regular hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours which the salary is intended to compensate."

Section 778.16 of said Regulations provides:

"Overtime compensation cannot be said to have been paid to an employee unless all the straight-time compensation due him under his contract (express or implied) or under any applicable statute has been paid."

The parties stipulated before the Master that All-States has been engaged in commerce and in the production of goods for commerce within the meaning of the Act.

On June 10, 1964, James P. Mitchell, Secretary of Labor (hereinafter "plaintiff"), moved the court for an order adjudicating the defendants in civil contempt of court by reason of their failure and refusal to obey the above quoted provisions of said order and imposing a compensatory fine in an amount equal to the difference between what the defendants had actually paid to their employees and the amount the defendants should have paid had they obeyed the said order. The plaintiff asked that the fine be paid to him for distribution to the employees entitled thereto and that said compensatory fine also include an amount sufficient to reimburse the Secretary of Labor for the costs and expenses of investigating, instituting and maintaining this proceeding.

The court referred the matter to Richard B. Cooper of 30 Rockefeller Plaza, New York, New York, as Master to hear and report. Mitchell v. All-States Business Products Corp., 232 F.Supp. 624 (E.D.N.Y.1964). The order of reference, dated July 14, 1964, directed the Master to hear and to report to the court his findings of fact and conclusions of law upon the following requests made by the plaintiff:

"(1) That the respondent All-States Business Products Corporation and the respondent Arthur Kunzweiler be adjudicated in civil contempt of this Court by reason of their failure and refusal to obey the judgment of this Court entered on July 14, 1959.

(2) As remedial action, to compensate the Secretary of Labor for the deprivation of the relief granted to him by the said judgment of the Court, brought about by the respondents' contumacy, that the Court impose a compensatory fine in an amount equal to the difference between what the respondents have actually paid to their employees subsequent to the entry of the Court's judgment, and the amount the respondents should have paid their employees had they not failed and refused to obey the judgment of the Court; that the Court order such amount paid to the Secretary of the United States Department of Labor for distribution to the employees entitled thereto under the provisions of the said judgment.

(3) That the compensatory fine also include an amount sufficient to reimburse the Secretary of Labor for the costs and expenses of investigating, instituting and maintaining this proceeding."

The Master filed his report on May 26, 1965. This matter is now before the court upon the several motions of the parties, pursuant to Rule 53(e) (II) of the Federal Rules of Civil Procedure, for orders adopting only certain parts of the report.

The defendant Kunzweiler introduced into evidence the "Payroll Record" of All-States for the calendar year 1962. The plaintiff introduced into evidence Wage Transcription and Computation Sheets (hereinafter "Wage Sheets"). The parties stipulated that the Wage Sheets were accurate as to the total wages paid during the period covered thereby, i. e., the period commencing December 1, 1961 and ending December 20, 1963. The record before the Master does not show from what source these Wage Sheets were compiled. However, a comparison of the Wage Sheets and the Payroll Record for the calendar year 1962 re-

veals that the amounts shown in each as to the sums paid to the several employees of All-States are identical. As to the Payroll Record of All-States for the calendar year 1962, therefore, it, too, purports to be an accurate record of the wages paid by All-States to its employees during the period January 1 to December 31, 1962. It is not necessarily an accurate record of the wages that should have been paid.

This Payroll Record lists:

the name of each employee;

his regular weekly salary paid each week;

the amounts of pay for over-time each week;

the amounts of pay for nite work each week;

the gross compensation paid each employee each week less the amounts withheld for state and federal taxes; social security, etc.;

the net salary paid to each employee each week;

the number of the All-States' check by which the net salary was paid to each employee each week.

A comparison of the testimony of several of the employees (we exclude for the moment the matter of any overtime work by Odom) as to the fact that they worked overtime during certain weeks in 1962 and the Master's findings with the Payroll Record for those weeks reveals that the overtime work of these employees as found by the Master is not reflected in the Payroll Record; that in almost every instance, the employee received no compensation for the overtime work so found by the Master. For example, the Master found that the employee Terranova worked in excess of 40 hours each week during the period January 1 through June 1962. The Payroll Record records no work by Terranova in excess of 40 hours during any week within that period and, of course, no compensation for any such work. The Master found that the employee Carolyn Mae Silber (now Pilchick) worked in excess of 40 hours during each week of the calendar year 1962. The Payroll Record credits

her with overtime only during the week ending November 23, 1962, in the sum of $8.04. This is the only amount she received for overtime during the entire year of 1962. The Master found that the employee Mary Lazar worked in excess of 40 hours per week during each week of 1962. The Payroll Record, on the other hand, credits her with only two overtime payments—each in the sum of $22.50 for the weeks ending November 23 and November 30, 1962.

██ ██ The findings of the Master as to overtime work performed by these three employees is based upon clear and convincing proof and is not clearly erroneous and the court adopts said findings. Hart Schaffner & Marx v. Alexander's Dep't Stores, Inc., 341 F.2d 101 (2d Cir. 1965); Stringfellow v. Haines, 309 F.2d 910 (2d Cir. 1962). It follows that there was clear and convincing proof at the hearing before the Master that the defendants All-States and Kunzweiler failed to keep the accurate records prescribed by the Act during the year 1962 and violated the injunctive provisions of the order of this court, dated July 14, 1959, and the court so finds. The court, therefore, does not adopt the Second finding of the Master that "It was not proved to a standard of clear and convincing proof that Kunzweiler and All-States failed to make, keep and preserve adequate and accurate records * * *," nor does the court adopt the Master's conclusion number 3 that neither of said defendants violated this court's injunction.

██ Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946) is the leading case on the question of how to calculate the amount due to an employee by an employer who has failed to keep proper and accurate records. There, employees of the defendant sued their employer pursuant to 29 U.S.C. § 216(b) (52 Stat. 1069, § 16(b)) to recover unpaid wages for overtime. Under this section, employees may maintain such an action unless and until the Secretary of Labor files a complaint in a United States district court to enjoin

violations of section 15 of the Fair Labor Standards Act, as amended, 52 Stat. 1068, 29 U.S.C. § 215.

The Supreme Court reversed and remanded the case to the Court of Appeals for the Sixth Circuit, because that court, as well as the Master, had imposed upon the employees an improper standard of proof. That court had held that the burden rested upon the employees to prove by a preponderance of the evidence that they did not receive the wages to which they were entitled under the Act and to show by evidence rather than conjecture the extent of overtime worked, stating that it was insufficient for them merely to offer an estimated average of overtime work. The Supreme Court held that an improper standard of proof had been imposed upon the employees—a standard that has the practical effect of impairing many of the benefits of the Fair Labor Standards Act:

> "The remedial nature of this statute and the great public policy which it embodies * * * militate against making that burden an impossible hurdle for the employee. Due regard must be given to the fact that it is the employer who has the duty * * * to keep proper records * * * and who is in position to know and to produce the most probative facts concerning the nature and amount of work performed. Employees seldom keep such records themselves; even if they do, the records may be and frequently are untrustworthy. It is in this setting that a proper and fair standard must be erected for the employee to meet in carrying out his burden of proof.

> * * * [W]here the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a more difficult problem arises. The solution, however, is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act. In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate. * * * Nor is such a result to be condemned by the rule that precludes the recovery of uncertain and speculative damages. That rule applies only to situations where the fact of damage is itself uncertain. But here we are assuming that the employee has proved that he has performed work and has not been paid in accordance with the statute. The damage is therefore certain. The uncertainty lies only in the amount of damages arising from the statutory violation by the employer. In such a case 'it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts.' * * * It is enough under these circumstances if there is a basis for a reasonable inference as to the extent of the damages." 328 U.S. 680, 687–688; 66 S.Ct. 1187, 1192–1193.

This principle was applied in Mitchell v. Caldwell, 249 F.2d 10 (10th Cir. 1957),

an action by the Secretary of Labor to recover overtime pay for an employee and in Mitchell v. Del-Cook Lumber Co., 48 CCH Lab.Cas. ¶31,519 (M.D.Ga.1963), a civil contempt case.

The Master applied the method of calculating the amount due each employee enunciated in *Anderson*, supra, and found the amounts due each employee for overtime to be as follows:

| | | |
|---|---|---|
| Richard Terranova | — | $503.40<br>for period December 1, 1961 to March |
| (nee Silber) | | for period December 1, 1961 to March<br>15, 1963. |
| Carolyn Mae Pilchick | — | $695.63<br>8, 1963. |
| Mary Lazar | — | $636.64<br>for period December 1, 1961 to March<br>15, 1963. |
| Phyllis Wehringer | — | $45.<br>for period June and July 1963. |
| Clarence William Odom | — | $442.96<br>for period prior to March 15, 1963 and<br>$126.22<br>for period after March 15, 1963 |
| Total before March 15, 1963<br>"   after   "   "   " | | $2,278.63<br>171.22 |
| Grand Total . . . . . | | $2,449.85 |

The plaintiff objects to the Master's above findings as to the employees Terranova and Odom, claiming that the Master should not have disregarded Odom's personal records of his hours of overtime and should not have excluded from the claimed overtime of these two employees his estimate of the time they spent in socializing and drinking. The defendants object to all of the Master's findings of overtime as to all of these employees, claiming that the plaintiff should have borne a burden of proof which, in fact, has been repudiated by the Supreme Court in *Anderson*, supra. They are especially critical of the Master's finding as to Odom.

Odom testified and there was introduced in evidence his claimed personal records of his hours of work each week from October 27, 1961 to June 28, 1963. This record consisted of Odom's entries in pencil and in various colors of ink on separate sheets stapled together. Odom's own testimony was to the effect that the entries were not all made on the listed dates; that he rounded out his figures and he admitted that he had made inaccurate entries of alleged overtime on three or four occasions. The Master found that Odom's records were false and fabricated for the purpose of this litigation; that Odom's testimony as to his records was knowingly untrue and the Master gave no weight to Odom's testimony as to any of his alleged uncompensated overtime.

Nevertheless, the fact that Odom's records were not accurate and not worthy of belief does not preclude recovery as against an employer who has failed to keep accurate records if there was other evidence before the Master on the basis of which he could reasonably find that Odom did work overtime (not shown on the employer's records) for which he had not been compensated.

The employees Terranova, Pilchick and Lazar testified as to their overtime work (uncompensated) and testified, further, that when they worked overtime they saw Odom working overtime. For example, Terranova testified to having worked overtime during the period of the week ending January 5, 1962 to the week ending March 30, 1962, and that Odom worked overtime during that period whenever Terranova worked overtime. The defendants' Payroll Record shows no overtime for either Terranova or Odom during any of those weeks. The employees Pilchick and Lazar also testified to having worked overtime during that same period and to having seen Odom working overtime whenever they worked overtime during that period. The defendants' Payroll Record shows no overtime for any of these four employees during any part of that entire period. There was similar testimony as to other periods when the Payroll Record of defendants showed no overtime for Odom.

■■ The court adopts the Master's report as to the amounts due each of the four employees as itemized above and finds the defendants guilty of civil contempt for having violated paragraphs (2) and (4) of the order of this court dated July 14, 1959.

Kunzweiler contends that the new findings proposed by the Secretary in his motion for action upon the Master's report are untimely. The Master's report was filed with the court on May 26, 1965. The docket sheet shows that copies of the findings and conclusions were mailed to the attorneys for the parties on that same day and Kunzweiler admits receipt of that notice. Rule 53(e) (II) provides:

> "Within 10 days after being served with notice of the filing of the report any party *may* serve written objections thereto upon the other parties. Application to the court for action upon the report and upon objections thereto shall be by motion and upon notice as prescribed in Rule 6(d). The court after hearing may adopt the report or may modify

it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions." (Emphasis added.)

Kunzweiler claims to have served written objections on June 3, 1965. On June 7, 1965 he filed his notice of motion, returnable on June 23, 1965, addressed to the Master's report. On June 23, 1965 a stipulation consented to by all the parties was filed with the court adjourning the motion to August 11, 1965. Kunzweiler contends that the Secretary's time to file objections was not extended and accordingly his motion must be denied as far as it requests the court to adopt new findings. The Secretary claims that written objections were served upon the defendants' attorneys three weeks before the return date of the motion.

■ The Rule provides that "any party may serve written objections," but it is not necessary to make objections to the Master's findings as permitted therein. Henry Hanger & Display Fixture Corp. of America v. Sel-O-Rak Corp., 270 F.2d 635 (5th Cir. 1959). The Rule clearly gives the court the power to modify the Master's report upon a motion for action upon the report and the failure of the Secretary to timely serve objections does not limit this power. 5 Moore, Federal Practice ¶53.12 [1]. Cf., Bingham Pump Co. v. Edwards, 118 F.2d 338 (9th Cir.), cert. denied, 314 U.S. 656, 62 S.Ct. 107, 86 L.Ed. 525 (1941); United States v. 1,674.34 Acres of Land, More or Less, in Benton County, Arkansas, 220 F.Supp. 893 (W.D.Ark.1963).

■ A district court has the power to decree restitution of unpaid overtime wages upon a finding of civil contempt of a court decree ordering compliance with the provisions of the Act. McComb v. Jacksonville Paper Co., 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599 (1949); Tobin v. La Duke, 190 F.2d 677 (9th Cir. 1951) (per curiam); McComb v. Norris, 177 F.2d 357 (4th Cir. 1949). A district court may order the payment of court costs and of the expenses of the Secretary of Labor in investigating and presenting

a matter such as this where the court finds the defendants guilty of civil contempt. Tobin v. La Duke, supra; McComb v. Norris, supra. The taxing of the costs of this reference is discretionary with the court which may direct that they be shared equally by the parties; be borne by the unsuccessful party or in any other manner within the court's sound discretion. Fed.R.Civ.P. 53; E. I. Du Pont De Nemours and Co. v. Purofied Down Products Corp., 176 F.Supp. 688, 701 (S.D.N.Y.1959).

The defendant All-States may purge itself of civil contempt by paying the following sums within thirty (30) days from the date of the service of the order to be entered hereon:

> (1) to the plaintiff the sum
>     of                              $  171.22

and, jointly with the defendant Kunzweiler,

> (2) to the plaintiff the sum
>     of                              $2,278.63

> (3) to the plaintiff the sum
>     of                              $  964.25
>
>     (the plaintiff's investigative costs)

> (4) to the Master the sum of $  515.45
>     (the Master's disbursements)

> (5) to the Master the sum of $1,000.00

hereby fixed as the fees of the Master.

The defendant Kunzweiler may purge himself of civil contempt by paying jointly with the defendant All-States within the said period of time:

> (1) to the plaintiff the sum
>     of                              $2,278.63

> (2) to the plaintiff the sum
>     of                                 964.25

> (3) to the Master the sum of       515.45

> (4) to the Master the sum of     1,000.00

Settle an order consistent herewith on or before fifteen (15) days from the date hereof.